[No. 26033. *En Banc.* June 19, 1936.]

FIRST NATIONAL BANK OF SEATTLE, *Respondent*, v. ANITA HEMRICH, *Individually and as Guardian, Appellant*, AMELIA HEMRICH *et al., Defendants.*[1]

*F. C. Kapp,* for appellant.

*Poe, Falknor, Falknor & Emory,* for respondent.

TOLMAN, J.—In October, 1934, the respondent bank commenced two separate actions predicated upon promissory notes made by John A. Hemrich. One suit was based upon notes made by Hemrich alone and the other upon a note signed by Hemrich and also

[1]Reported in 58 P. (2d) 827.

by the Old Yankee Syrup Company, a corporation. Amelia Hemrich, as guarantor ·of all of the notes, was made a defendant in each suit. In each complaint, it was alleged that Hemrich had pledged and delivered to the plaintiff six hundred and ninety-seven shares of the capital stock of the First National Bank of Seattle as security for the payment of the note or notes, and each complaint sought the foreclosure of the plaintiff's pledgee's lien upon the same six hundred ninety-seven shares of stock.

The two cases were consolidated for trial below and tried to the court, sitting without a jury. The trial court found:

"That heretofore, and for the purpose of securing plaintiff in the prompt and faithful payment of any and all obligations owing or to be owed in the future to plaintiff by said John A. Hemrich, the latter pledged and delivered to plaintiff, and plaintiff has at all times since held as pledgee, 697 shares of the capital stock of First National Bank of Seattle, a national banking association. That said stock was taken by the plaintiff as security upon a debt previously contracted in good faith. That plaintiff has a pledgee's lien upon said stock which is prior and paramount to any interest of the defendants in and to said stock, and that plaintiff's pledgee's lien thereupon should be foreclosed in the manner provided by law and that the proceeds of said sale should be applied in partial satisfaction of the judgment awarded plaintiff herein, and in satisfaction of the judgment awarded plaintiff for attorneys' fees."

Judgments were entered for the amount claimed in each action, and each judgment established in the plaintiff a pledgee's lien upon the bank stock and provided for the foreclosure of the lien and the sale of the bank stock to satisfy such lien.

Anita Hemrich, individually and as guardian of the estate of John A. Hemrich, has appealed, and the

errors assigned and argued all go to the question of whether or not the respondent ever had a pledgee's lien on the bank stock.

We cannot set forth the various arguments presented or attempt a detailed answer to each, but must be content with indicating the evidence which, in our opinion, amply sustains the finding of fact made by the trial court hereinbefore quoted.

There was introduced in evidence a so-called general loan and collateral agreement, dated October 13, 1923, executed by John A. Hemrich and by him delivered to the respondent, which, among other things, provides:

"In order to obtain loans from and otherwise deal with the DEXTER HORTON NATIONAL BANK OF SEATTLE, [the predecessor in interest of respondent] the undersigned agrees that all loans, advances or credits hereafter or heretofore obtained from said bank by the undersigned shall be repayable by the undersigned at said bank on demand, unless otherwise agreed in writing at the time, and shall bear interest at rates to be agreed upon; and the undersigned for value received hereby assigns to the DEXTER HORTON NATIONAL BANK OF SEATTLE, as security for any and all indebtedness, obligation or liability of the undersigned to said bank, now or hereafter existing, matured or not matured, absolute or contingent, individual or firm, and whereever payable, including in addition to other indebtedness, obligation and liability, all such as may arise from endorsements of notes, acceptances or any other items or paper discounted by said bank or held by said bank, either absolutely or as collateral security to any loans or advances of any sort whatever, and including overdrafts and indebtedness by the undersigned to said bank, on account of collections or paper received for collection by the undersigned, the following, viz: All moneys, chattels, negotiable instruments, securities, bills of lading, warehouse receipts, paper credits, demands, choses in action, rights and property of every kind, tangible or intangible, at any time

502

in possession or control of said bank or any of its agents or correspondents, or in transit to it by mail or carrier, belonging to, for account or subject to the order of the undersigned, . . . and the undersigned hereby irrevocably authorizes the said DEXTER HORTON NATIONAL BANK OF SEATTLE at any and all times at its option to hold and collect any and all thereof, and the proceeds thereof, to endorse any thereof on behalf of and in the name of the undersigned, to sell without advertisement or notice any part or all thereof at private or public sale, at the option of said bank, (said bank being at liberty to become the purchaser if the sale is public), and to apply any and all said property or proceeds thereof, and also any and all debts, liabilities or balances in favor of the undersigned, (including such as arise from deposits, discounts, collections or items in transit), now or hereafter owing or due from or chargeable against said bank or any of its agents and correspondents, to the payment of expenses of any such sale or sales or the negotiation or collection of any said collaterals and to the payment of any or all of said indebtedness, obligation or liability of the undersigned, at the option of the officers of said bank, whether said indebtedness, obligation or liability to which the same is applied be then matured or not. Said bank may assign or transfer the whole or any part of said indebtedness, obligation or liability of the undersigned and may transfer therewith as collateral security therefor, the whole or any part of the chattels, instruments, securities, papers, credits, demands, choses in action, rights and property hereby assigned to said bank, and the transferee shall have the same rights, powers and authority with reference to the indebtedness, obligation or liability transferred and the collaterals transferred therewith as are hereby given to said bank, . . . This instrument shall irrevocably apply to all dealings and transactions heretofore or hereafter had with said bank, unless the undersigned and said bank shall otherwise expressly agree in writing signed by the undersigned and said bank, and no provision of this instrument shall be deemed to be waived by said bank unless said waiver is in

writing and signed by said bank or duly authorized agent.''

■ It is true that this general loan and collateral agreement was executed before the particular certificate evidencing the ownership of six hundred ninety-seven shares of bank stock came into existence, and also before the notes sued on were made; but the agreement evidences that Hemrich, the maker, was, or was about to become, a customer of the bank, and the agreement was clearly intended to cover the future relationship of borrower and lender. Every loan thereafter made by the bank to Hemrich was presumably made in reliance upon the agreement. As each loan was made, Hemrich, in legal effect, renewed his promise that any asset of his coming into the possession of the bank should be held by the bank as collateral to secure that loan.

It clearly appears that the certificate of stock representing the six hundred ninety-seven shares had been held by the respondent since prior to 1933, together with an irrevocable power of attorney authorizing the bank to transfer title to the stock. This, under the general agreement, was sufficient.

■ All of the other evidence in the case was in harmony with what has been outlined with the possible exception of a receipt which reads:

"FIRST SEATTLE DEXTER HORTON NATIONAL BANK
$............................        Seattle, Wash., Jan. 7, 1932, 193......
   "Received from........................ John Hemrich............................
697 shares 1st Natl. Bank................................................................
........................stock in safekeeping........................................................
........................of officers........................FIRST NATIONAL BANK OF SEATTLE
                                   "C. L. MCCORMICK,
                                        "Note Dept.''

This receipt unexplained is somewhat ambiguous, but as explained by oral testimony, it does not in any

wise tend to dispute respondent's right to a lien on the bank stock. Oral testimony on that subject was properly admitted. *Hanson v. Roesch,* 104 Wash. 257, 176 Pac. 349; *Pickering v. Roeder,* 104 Wash. 539, 177 Pac. 321; *Langford v. Pringle,* 105 Wash. 277, 177 Pac. 731.

But even had the stock been deposited for safekeeping alone, it thus would have come lawfully into the possession of the bank; and upon so coming into the bank's possession, it would become subject to the terms of the general loan and collateral agreement.

But, says the appellant, by § 5201, Revised Statutes of the United States, the bank was forbidden to make a loan on the security of its own shares

". . . nor be the purchaser or holder of any such shares, unless such security or purchase shall be necessary to prevent loss upon a debt previously contracted in good faith; . . ."

This presents to us the question of the effect of the Federal statute. Revised Statutes, § 5201 (Title 12, U. S. C. A., § 83).

This statute has been construed by the Federal courts many times, and always to the effect that borrowers cannot raise such a defense, and that the Federal government alone can interfere. *Jackman v. Continental Nat. Bank,* 16 F. (2d) 728, 51 A. L. R. 336; *Schneider v. Thompson,* 58 F. (2d) 94; *National Bank v. Matthews,* 98 U. S. 621; *National Bank v. Whitney,* 103 U. S. 99; *National Bank of Xenia v. Stewart,* 107 U. S. 676, 2 S. Ct. 778, and *Thompson v. Saint Nicholas Nat. Bank,* 146 U. S. 240, 13 S. Ct. 163.

The judgment is right and is affirmed.

MAIN, GERAGHTY, BEALS, BLAKE, HOLCOMB, and STEINERT, JJ., concur.