## Short, Appellant, *v.* Allegheny Trust Company.

56

Argued March 24, 1938. Before KEPHART, C. J. SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Harvey A. Miller,* of *Miller & Nesbitt, Arthur W. Henderson* and *Fred C. Houston,* for appellant.

*John J. Heard,* with him *John C. Bane, Jr.,* and *Reed, Smith, Shaw & McClay,* for appellee.

OPINION BY MR. JUSTICE STERN, April 18, 1938:

Plaintiff, indebted to defendant on loans, executed and delivered to it two promissory notes, dated May 2, 1933, in the amounts of $56,027.50 and $83,495.72 respectively, payable five months after date. With each was deposited certain enumerated stocks and bonds as collateral, and the notes gave defendant the "right to call for such additional collateral security as the holder hereof may from time to time demand, and on failure to deposit such additional collateral security, the amount of this obligation shall, at the option of the holder, be deemed to be due and payable without demand or notice, and the holder hereof may forthwith collect the debt secured by this obligation without awaiting its maturity, and a lien is hereby given to the company for the amount of all the liabilities aforesaid upon any property, securities and balance of deposit account of the undersigned at any time given unto or left in the possession of the company with full power and authority to the holder hereof upon the non-performance of the foregoing agreements, to sell, assign and deliver the whole of the above-mentioned security, or any part thereof or any substitute therefor, or any additions thereto," etc.

A large part of the collateral was sold by defendant between June 12 and July 27, 1933. Plaintiff claims that no call was made upon him, after the execution of the notes, for the deposit of additional collateral; therefore, he contends, the maturity of the notes was not accelerated and the sales of collateral were premature and unwarranted. Defendant, on the other hand, insists that it made frequent calls in the period between May 2 and June 12, 1933, to which plaintiff failed to respond, and it was therefore justified in proceeding with liquidation.

Another dispute between the parties arose from the fact that on March 17, 1933, plaintiff delivered to defendant certificates for 450 shares of its capital stock owned by him, accompanied by the customary power of attorney to transfer the stock. On September 24, 1934, defendant sold these shares at public sale on account of the then remaining indebtedness of plaintiff on the notes, defendant itself becoming the purchaser. It is plaintiff's contention that this constituted an illegal conversion of the stock because he had placed it in the possession of defendant merely as an assurance that it was not pledged elsewhere on some other indebtedness, and it was to be returned to him when defendant bank reopened after the banking holiday which then existed under the President's proclamation. Defendant maintains, on the contrary, that this stock, although not specifically listed among the items of collateral accompanying the notes, had been given to it by plaintiff as additional security for the payment of his loans, which had run on since 1927—the notes of May 2, 1933, being renewals of previous ones—and that it became collateral for the obligation of the May notes under the terms thereof.

The present suit is in assumpsit on a claim of $146,-324.18 for damages sustained by reason of defendant's sale of these various securities. The trial before a jury resulted in a verdict for defendant. There were two issues of fact in the case: (1) Were there demands by defendant for additional collateral, and a refusal by plaintiff to furnish it, subsequent to May 2 and prior to June 12, 1933, when defendant began selling the securities? (2) Were the 450 shares of defendant company's stock deposited with it by plaintiff as collateral security for his indebtedness, or merely delivered for temporary possession without any assignment of interest or title?

Plaintiff's chief grievance regarding the conduct of the trial is that the court permitted his cross-examina-

tion by defendant to be carried beyond the bounds of his testimony in chief, and to be extended to cover the financial dealings and general relations between the parties for a period commencing several years prior to the execution of the notes of May 2, 1933. It cannot be denied that the cross-examination of plaintiff, as well as other evidence introduced in the trial, was not strictly relevant to the exact issues involved, but "the admission of irrelevant evidence is not always ground for reversal"; it is so only "where it has a tendency to draw the minds of the jury from the issue, and to prejudice, confuse or mislead them": *Colonial Trust Co. of Reading v. Getz*, 28 Pa. Superior Ct. 619, 633. Cross-examination of a plaintiff need not be confined to the scope of his direct testimony, but may extend to all relevant subjects which are not, strictly speaking, matters of defense, provided the orderly development of the trial is not impaired thereby: *Greenfield v. Philadelphia*, 282 Pa. 344, 348, 349. Such cross-examination "may embrace any matter germane to the direct examination, qualifying or destroying it, or tending to develop facts which have been improperly suppressed or ignored by the plaintiff": *Conley v. Mervis*, 324 Pa. 577, 582, 583. Moreover, the decision as to its proper limits rests within the sound discretion of the trial judge, and a failure of the court properly to restrict it is not ground for reversal unless the discretion be manifestly abused and the complaining party injured: *Glenn v. Philadelphia and West Chester Traction Co.*, 206 Pa. 135, 137, 138; *Conley v. Mervis*, supra.

The 450 shares of defendant company's stock having been deposited by plaintiff prior to the execution of the notes of May 2, 1933, it was not only proper but necessary for the jury, in order that it might determine where the truth lay in regard to the terms and circumstances under which such delivery was made, to be informed as to the state of plaintiff's indebtedness at that time, the collateral which had theretofore been given,

and the way in which payments had been and were then being made. Furthermore, plaintiff himself put in evidence the fact that he had been a customer of defendant for upwards of twenty years, and he testified in direct examination to having executed and delivered to defendant two mortgages in March, 1933, as additional security for his then existing indebtedness; also that he was a director of defendant company and had joined with some of the other directors in signing a bond for $200,000 to enable defendant to reopen after the holiday, that he had been connected with defendant since it was first organized, that he had given it his shares of its stock because he wanted to show that "I am a good sport and my heart is in this thing and I am in it deep," that "my heart and soul was in the institution and I done everything in my power on the strength of that." Statements of this kind, made to the jury in a case in which the bank had sold out the collateral accompanying plaintiff's note, were obviously designed to create sympathy for him and prejudice against the bank, and it was not, therefore, improper for defendant to attempt to meet this maneuver by educing facts from cross-examination of plaintiff and from its own witnesses tending to show that plaintiff had not deposited his bank stock with defendant in a spirit of generosity or altruism but had been reluctantly induced to put it up as collateral because of the insistence of defendant—which in turn was being pressed by the banking authorities —that he should either reduce his indebtedness or strengthen the account by the deposit of additional collateral. It may be added that the controversy on this particular issue loses much of its importance from the fact that, as plaintiff apparently admits, even if he had succeeded in proving he did not deposit this stock as collateral security in March, the subsequent notes of May 2, 1933, established a lien upon all securities left by him in defendant's possession to the amount of his liability under the notes, and this provision made them

a part of the collateral for the payment of the notes with authority to defendant to sell them in the same manner as the other collateral: see *First National Bank of Seattle v. Hemrich,* 186 Wash. 499, 58 Pac. (2d) 827.

Plaintiff argues that defendant could not accept its own stock as collateral or become the purchaser thereof, because of federal and state legislation* prohibiting certain banking institutions from making loans on the security of the shares of their own capital stock or becoming the purchaser of such shares. These statutes except cases where such security or purchase is necessary to prevent loss upon a debt previously contracted in good faith. Here the bank stock was taken by defendant to strengthen the collateral which it held as security for plaintiff's previously existing debt. He contends that it was not necessary for defendant to sell this stock because the other collateral would have been sufficient to liquidate the indebtedness and should have been disposed of first, but the facts indicate that the sale of the stock was needed in order to obtain full payment, and, since no other bidder appeared, defendant itself was obliged to become the purchaser. In any event, it is settled that, the contract having been executed, the securities sold, and the proceeds applied to the payment of the debt, plaintiff has no standing to assert the invalidity of the transaction. Only the governmental authorities can raise objection: *National Bank of Xenia v. Stewart,* 107 U. S. 676; *Thompson v. St. Nicholas National Bank,* 146 U. S. 240, 251; *Lantry v. Wallace,* 182 U. S. 536, 551, 552; *Richards v. Integrity Trust Co.,* 317 Pa. 513, 517.

---

* *Federal:* Acts of June 3, 1864, ch. 106, § 35, 13 Stat. 110, R. S. § 5201 12 U. S. C. A. § 83; December 23, 1913, ch. 6, §9, 38 Stat. 259; June 21, 1917, ch. 32, § 3, 40 Stat. 232; August 23, 1935, ch. 614, § 203 (a), 49 Stat. 704, 12 U. S. C. A. § 324. *State:* Acts of June 14, 1901, P. L. 561, sec. 2; May 15, 1933, P. L. 624, Art. X, § 1011.

Plaintiff's final contention is that the charge was in-adequate and did not clearly present the issues to the jury. No specific objections were made at the time and we find no such justification of this complaint as would warrant a reversal.

On the whole, after a careful reading of the voluminous record, we are far from convinced that injustice was done by the verdict.

The judgment is affirmed.