## Parente, Appellant, *v.* Dickinson.

Argued November 14, 1957.   Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

*Herman B. Shepard*, with him *Jerome M. Libenson*, for appellant.

*Robert L. Fleming*, for appellees.

OPINION BY MR. JUSTICE BELL, January 16, 1958:
This is an appeal from a judgment entered on a verdict in favor of defendant. Plaintiff brought an action in trespass for injuries sustained by him resulting from a collision with defendant's automobile. Plaintiff's testimony as to how the accident happened was both confusing and contradictory. He first testified that he was struck while on the corner by the curbstone. He testified that he first saw the car when it was pretty close, about three feet away, and that he had taken two or three paces from the curbstone onto

the street when the car hit him. Several times in answer to leading pertinent questions as to how the accident happened he said he did not know, he did not remember. The defendant and his eye witness testified that the front of the car was just about in front of the plaintiff when he stepped out onto the street and walked into the front fender of the car. Defendant's testimony was corroborated by a police officer who testified that he made an examination less than an hour after the accident, and failed to find any evidence of tire tracks in the dirt path adjoining the highway beyond the curb where plaintiff said he was standing, or any evidence that defendant's car had gone over the curb.

Plaintiff on cross-examination was asked the question "Did you step off the curb before you were hit, and if so, how many steps had you taken?" To which plaintiff answered "Two or three feet and it grabbed me by the coat and it drug me." The jury returned a verdict in favor of the defendant; we believe it was the only just verdict that could have been rendered under the evidence in this case.

Judge LEWIS, the trial Judge in this case, deserves credit for leaning over backward to protect plaintiff, because of his age and his difficulty in speaking English. The only reason containing any substance which plaintiff alleges for a new trial is that counsel for defendant asked an unfair misleading question on cross-examination: "How far away from you was the car when you stepped out in the street?" The trial Judge in his opinion dismissing the motion for a new trial said, inter alia: "After a careful and complete examination of the entire record, we feel that, under all of the circumstances hereinbefore referred to, the question put to the plaintiff, an interested party, was not improper. Such a witness is always subject to questions

testing his memory or credibility. When the question was asked of him on cross-examination, he had already *beclouded** the issue by two versions as to where he was when struck. He had said he was 'on the corner by the curb stone' and also 'on the curb stone.' He had also said he was struck on the right side, testimony virtually irreconcilable with the rest of his story.

"It is therefore apparent that plaintiff's own responses on direct examination raised inferences inconsistent not only with the allegations of his complaint, but possibly inconsistent also with his right to recover. 'Cross-examination is not confined to the precise facts elicited upon direct examination, but may be extended to all inferences, deductions and conclusions which may be drawn therefrom. The scope of cross-examination rests within the trial court's sound discretionary power.' . . . Lester v. Century Indemnity Co., Aplnt., 356 Pa. 15, 18.**

We believe under the evidence in this case the question asked on cross-examination was perfectly proper and its allowance was undoubtedly within the sound discretionary power of the trial Judge. It is clear that the plaintiff had a fair trial and that there was no basic or fundamental error therein.

Judgment affirmed.

Mr. Justice COHEN dissents.

---

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

Charles Parente, the plaintiff in this case, 83 years of age at the time, and sitting in a wheel chair, entered

---

* Italics, ours.

** The law pertaining to cross-examination is amplified in *Kline v. Kachmar*, 360 Pa. 396, 61 A. 2d 825; *Short v. Allegheny Trust Co.*, 330 Pa. 55, 59, 198 A. 793, and cases cited therein.

the courtroom in Wilkes-Barre, his left hand disabled and his right leg crippled from the accident which is the subject of this litigation, to tell the judge and jury the story of the happening which brought him to this sorry pass in his old age. He had other incapacities, not associated with the accident, which added to his troubles in court. He was half deaf from the assault of the passing years and, then, what he did hear, he did not always understand. As an immigrant who had toiled all his life in the manual and lowly occupations, he had never acquired the schooling which would equip him to cope with the wit and learning of the lawyers with their higher education. And therein lies the melancholy mischief of this case.

Like the stone-deaf Quasimodo who was tried before a judge who not only could not hear but who, during the proceedings, often closed his eyes to shut out the distraction of the courtroom, Parente went through a trial never able to acquaint his triers with the facts which, had they been known, would well have brought him a verdict for the injuries and the pain inflicted on him by the automobile which struck him down as he stood on or by a curb on Exeter Avenue in West Pittston on April 15, 1955.

The issue at the trial developed into a factual contest as to whether Parente was standing on the curb when the defendants' automobile collided with him, meaning, of course, that the car climbed the curb, or whether Parente stepped into the street as the car was passing. When Parente was asked where he was standing at the time of the impact with the car he replied through an interpreter: "I was here. (Pointing to position in photograph). On the corner by the curb stone." The Court then asked him: "What caused you to fall down?" And Parente replied: "The car struck me and knocked me down."

At no time in the direct examination did Parente indicate that he was anywhere except on the curb when he was struck by the automobile. In cross-examination defendants' lawyer asked: "How far away from you was the car when you stepped out in the street?" Parente's lawyer objected, and properly so. Parente had never said that he stepped out in the street. Defendants' counsel's question was obviously a trick question. The Trial Court overruled the objection and defendants' lawyer repeated the question as follows: "How far away was the car when you stepped out into the street?" Parente's counsel again objected, pointing out that this was a "double question." And it *was* a double question because it asked: "How far away was the car" and "Had you stepped out into the street?" The Court overruled the objection and required the plaintiff to answer. Parente replied: "Two or three paces."

Defendants' counsel had succeeded in putting across the famous "Have you stopped beating your wife?" question. He had dug a pit for the octogenarian and prepared to shove him into it. The Trial Judge now saw the pit and endeavored to prevent the plaintiff's falling into it. But in his solicitude to avert that fall, he pushed the plaintiff in himself. The Trial Judge turned to the interpreter and said: "Now in fairness to this witness, I wish you would slowly and clearly put this question to him and make this statement that at first he said, in answer to a question on direct examination, that he was on the curb stone when he was struck by the car and then later on cross-examination he said he had taken two or three paces off of and from the curb stone onto the street. . . . Take it slowly and easy and ask him if he was still on the curb when the car hit him or had he taken two or three steps from the curb stone when it hit him."

The transcript shows the answer as follows: "By the interpreter: I asked him about the curb stone. He said Yes, he was on the curb stone, he was standing still on the curb stone."

The Trial Judge now asked him again through the interpreter: "Q. When the automobile struck him, was he still on the curb stone? A. Sure."

This should have ended the query. Parente had emphatically stated he was still standing on the curb stone when the automobile ran him down, but the Court pursued him with another question: "Q. (By the Court) Now ask him can he explain what he meant when he said he was two or three paces out on the street when he was struck. Ask him if he can explain that?"

With this question, the Court toppled Parente into the pit which defendants' counsel had so neatly and precisely—and unfairly—excavated. It will be noted that the Court assumed that Parente had at one time said that he was two or three paces in the street when the collision occurred. Parente never once made such an assertion. When he answered "two or three paces" he was replying to the question: "How far away from you was the car—?"

The jury returned a verdict for the defendant which was affirmed by a majority of this Court. The Majority Opinion lauds the Trial Judge for "leaning over backward to protect plaintiff." I do not doubt for a moment that the Trial Judge was absolutely sincere in endeavoring to arrive at the truth, but I also believe that in "leaning over backward" he lost his equilibrium.. He ascribed to the plaintiff a posture of assertion which cannot be verified by the record. Thus, after the plaintiff had been tumbled, wheel chair and all, into the hole which defendants' counsel had spaded, there might still have been an opportunity for the plain-

tiff to get out, had it not been that in his charge to the jury, the Trial Judge buried the plaintiff and his cause completely by telling the jury that the plaintiff had said that ". . . he had left the curb and had progressed two or three paces therefrom onto the paved highway when he was struck."

The plaintiff at no time said that he had progressed two or three paces from the curb when he was struck.

The Majority Opinion says: "Plaintiff on cross-examination was asked the question 'Did you step off the curb before you were hit, and if so, how many steps had you taken?"

But this question was not put in cross-examination. It was put by the Trial Judge and, with all respect, I must say it was put very badly and unfairly. He repeated the fault of the defendants' counsel: he threw two questions in one. It was hard enough for the plaintiff, considering his age and infirmities, to get one question at a time, without having two fired at him simultaneously by the awesome figure in black robes on the throne towering above him. It must be noted here, in passing, that Charles Parente had been adjudged a mental incompetent, and a guardian ad litem had been appointed for him seven months prior to the trial. The guardianship was lifted only two days before the trial. Thus, for this and other reasons, including a desire for specificity, the Trial Judge should have leaned not backward but forward to make certain that the plaintiff thoroughly understood what was transpiring in the Court.

The record clearly shows that the plaintiff had difficulty in understanding. Just before the plaintiff took the witness stand, one of the attorneys Mr. Libenson, explained to the Court that probably Parente needed an interpreter. The following ensued: "By the Court: Let's see. Mr. Parente—By Mr. Libenson: The

Judge wants to talk to you. Q. (By the Court) Mr. Parente? A. Yes. Q. (By the Court) Can you hear me? A. Yes. Q. (By the Court) Can you speak English? Can you speak English? A. What he say."

Even after the interpreter had been mustered into service, there were still some difficulties, i.e.,: "Q. Now which direction was the car coming from when it hit you? A. From this side. Q. From the right? By the Court: I couldn't interpret. Could you? By Mr. Fleming: I couldn't." . . . Q. Now where did the car come from, your left or the right? A. The other side. By Mr. Fleming: He indicates his right. By the Court: If you can do better, go ahead. By Mr. Libenson: He tires very easily. We could be too extensive. By the Court: I won't ask another question."

But the Court did ask other questions, many of them, and some of them so telescoped and double-jointed as inevitably to create misunderstanding. We have quoted the one where the Court asked: "Did you step off the curb before you were hit, and if so, how many steps had you taken?"

To this two-pronged question the interpreter answered: "He answered two or three feet and it grabbed me by the coat and it drug me."

No one can state with conscientious certainty that this answer was made to the second part of the Judge's question. Why did the Judge not put a simple question, namely, "Did you step off the curb before you were hit?"

And then, if the plaintiff answered this question in the affirmative he could have been asked the second question: "How many steps had you taken?"

One cannot but be impressed with the fact that when questions were put simply, the plaintiff understood, through the interpreter, and replied: Thus at the very

end of the trial he was asked by the Court: "And how far out from the curb stone were you when you were hit?"

It will be noted here that although the question is clear, it is very leading, and seeks to persuade the witness to say how *"far out"* from the curb stone he was when hit. The witness had never said he was out from the curb stone. The witness, however, did not succumb to the persuading question and replied definitively, categorically, and unequivocally: "I was standing on the curb."

As already stated, the jury returned a verdict for the defendant and the plaintiff has asked for a new trial. I believe he is entitled to it because of the efforts intentionally made by defendants' counsel and unintentionally made by the Trial Judge to force the plaintiff off the curbstone of fact into the street of ambiguity, confusion, and unfairness. Let us look at the matter a little further. Mr. Libenson, plaintiff's counsel, asked the interpreter to put to plaintiff the following question: "Ask him [the plaintiff] the point where he stood when the car hit him?"

This was a sensible question, a fair question, the catalyst which would have resolved all the murky interrogation into a definitive, understandable proposition. If, after the plaintiff had stated he was on the curb when he was hit, the Court believed the plaintiff was somewhere else, the question put by Mr. Libenson would have clarified where the plaintiff was actually standing, even though he had already twice stated he was on the curb. But the Judge did not allow Mr. Libenson's question. He leaned backward in order to be fair and said: "We will strike that out." He then went on to say that it was the Court's duty to get all the facts and proceeded to put the blunderbuss question already quoted.

The Majority Opinion here quotes and affirms the Trial Court's Opinion wherein it is stated: "When the question was asked of him on cross-examination, he had already *beclouded* the issue by two versions as to where he was when struck." (Italics in original)

There was no beclouding on the part of the plaintiff, except where he failed to understand because of the way questions were put. The Trial Judge said further, and this Court approves his statement: "He the plaintiff had said he was 'on the corner by the curb stone' and also 'on the curb stone.'"

Where is the "beclouding" here? Whether the plaintiff was "on the corner by the curb stone" or "on the curb stone," it is clear that he was where no automobile had the right to be!

In his charge to the jury, the Trial Judge said to the jury that the plaintiff had given two versions of the accident and he then directed them: "Carefully weigh all of the testimony and then decide which of those two stories is correct."

I have already pointed out that the plaintiff gave only one version. Nevertheless, the two supposed alternatives of his testimony were advanced so ingenuously, so persuadingly, and so convincingly by the robed figure who guides the deliberations of the jury that the twelve trusting men and women decided in the secrecy and sanctity of the jury room, to follow the path which the Judge had told them existed but which, of course, had no reality, and as a consequence they came out with a verdict which at once challenges the impartial student.

On the central issue in this appeal, the right of defendants' counsel to ask a misleading question of a sickly, disabled, wheel-chaired octogenarian, the Majority says that "the scope of cross-examination rests within the trial court's sound discretionary power."

That is true, but I submit that here the Trial Court abused his "sound discretionary power." Chief Justice Maxey spoke wisely on this matter in the case of *DiBona v. P. T. C.*, 356 Pa. 204, when he said: "On cross-examination, leading questions can be properly asked a witness but *mis*leading questions cannot be. Setting verbal traps for a witness is not a legitimate branch of the art of cross-examination."

Where a witness is sly and evasive and where the cross-examiner has reason to assume that the witness is lying, I agree that ample latitude should be allowed the cross-examiner in ferreting out the truth. But we do not have any such situation here. I am convinced from reading the record that the Trial Court erred grievously in permitting misleading questions and, to a certain extent, indulging in them himself without realizing that they were misleading.

And I believe further that this Court, in refusing to grant a new trial on the demonstration of such palpable error, compounds the error, accentuates the injustice, and gives Charles Parente much to ruminate over as to what constitutes a fair trial—as he pushes himself forward and backward in his wheel chair—at 85 years of age.