## Walsh *v.* Sun Oil Company et al., Appellants. Kinney et al., Appellants, *v.* Sun Oil Company et al., Appellants.

Argued April 23, 1969. Before Bell, C. J., Jones, Cohen, Eagen, O'Brien, Roberts and Pomeroy, JJ.

ment refused March 6, 1970.

*Carl M. Mazzocone,* with him *James D. McCrudden, Glenn A. Troutman,* and *Sheer & Mazzocone,* for plaintiffs.

*Edward J. Gilson,* for plaintiff.

*Albert S. Fein,* for plaintiff.

*Henry T. Dolan,* for plaintiff.

*Edward Greer,* with him *Harry Kozart* and *Alan L. Spielman,* for defendant.

*Perry S. Bechtle,* with him *James P. Gannon,* and *Liebert, Harvey, Bechtle, Herting & Short,* for defendant.

OPINION PER CURIAM, January 30, 1970:

The order of the Court of Common Pleas of Philadelphia County is affirmed in Numbers 218 and 219. The judgments entered are affirmed as to all other plaintiffs.

84

CONCURRING AND DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:

The appellants present nothing but a far-fetched tortured argument. In an attempt to avoid every danger and risk which a fireman necessarily, and by the very nature of his exacting and dangerous job assumes, they further unwisely, unfairly and unrealistically seek to impose on an owner of property a *legal* duty to know more about fires and their causes than the firemen themselves who are experts in the field of "fires." Only by a stretch of the imagination can the facts in this case be distorted into a hidden danger which was created by defendants.

For these reasons, I dissent, and would affirm the Order of the lower Court which granted a new trial in Nos. 218 and 219, and I would grant a new trial in the other cases.

———

CONCURRING AND DISSENTING OPINION BY MR. JUSTICE COHEN:

By pretrial conference it was decided that two actions serving as test cases on liability were to be tried together, one to bind all injured firemen, the other to bind all deceased fireman. The court below, by amended order, departed from the procedure agreed upon at the pretrial conference and granted a new trial as to six of the thirty-two firemen. It did so because it felt the record indicated that contributory negligence was an issue as to these six and that a manifest injustice would be done if the defendants were not permitted to raise that issue. The pretrial order was silent as to how contributory negligence could be raised against individual plaintiffs. The lower court refused to grant a new trial as to the others because it felt the parties should be bound by their agreeemnt (contained in the pretrial order) and because the record did not indicate that there was a jury issue on contributory negligence

as to them. The majority affirms the lower court's order.

There is little authority as to what types of cases are suitable for treatment as test cases. Because our courts now face such a backlog of cases and because the test case device (by way of pretrial orders) offers some relief from that pressure, it seems appropriate to determine when, or at least when not, such a device should be used. One factor that must be present is the identity of issues, both factual and legal, in all cases that are subject to the order. Of course, the facts can only be developed later as the trial proceeds so the judge must use whatever is available to determine whether the case is of the type in which the facts are identical as to all parties or in which different facts will have no legal significance. It should have been obvious that this case does not fit into that category. The various firemen likely had different amounts of knowledge about this situation and fires in general, were in different locations and were doing different things at the time of the explosion. Therefore, it was improper for the lower court to have entered such a pretrial order, and a new trial should be granted as to all plaintiffs.

It should not matter that the pretrial order was bargained for or that no objection was raised until after the verdict because this is a matter of the integrity of the judicial system, something over which the parties have no control. As a matter of our supervisory powers over this Commonwealth's courts, we should hold that no court should use the test case device when it is obvious that facts pertaining to individual plaintiffs have legal significance apart from facts before the court in the representative suit. It is important for this Court to establish guidelines for this type of action because in the proper circumstances it can be quite useful.

For these reasons, I think a new trial should be granted both as to the six and also the other firemen.

CONCURRING. AND DISSENTING OPINION BY MR. JUS-TICE ROBERTS:

On April 15, 1961, an explosion destroyed a gasoline station in Philadelphia, killing three firemen and injuring twenty-nine others. Thirty-two separate suits were instituted; by pretrial conference and order, two actions serving as test cases on liability were tried together, one to bind all injured firemen, the other to bind all deceased firemen.[1] After a jury verdict for the two plaintiffs, defendants' motions for judgment n.o.v. and new trial were heard en banc. The court removed six of the cases from the scope of the pretrial order, directing that those cases be tried. It then denied defendants' motions for new trials as to all the other cases. Plaintiffs are appealing in the six cases which were ordered to be tried. Defendants Sun Oil Company and Midstates Equipment Service, Inc. are appealing from the order denying them new trials as to all other plaintiffs.

Approximately three months before the explosion in question, the manager of the gas station received complaints from customers concerning water and dirt in the gasoline. Sun Oil, when informed, sent its maintenance men to check the pumps, but no evidence of water was found. Approximately three weeks before the explosion, the manager again informed Sun of complaints

---

[1] The pretrial order provided, inter alia:

"1. Two test cases will be tried simultaneously as follows:

(a) One surviving fireman against all defendants, the outcome to constitute a precedent and be binding on the cases of all other surviving firemen against all other defendants, as to liability only.

(b) (Simultaneously) One case arising from the death of a fireman will be tried against all defendants to the same end, in the same manner and with the same effect on all cases arising from the deaths of other firemen . . . as the prior case."

of water. Sun contacted Midstates, an organization which specializes in repair of gasoline station facilities, and one of Midstates' employees was sent to check the gasoline tanks for water. One of the tanks at the station was buried under a cement floor in the basement, so Midstates' employee broke the cement, tested the tank for water, and, finding none, left. A day before the explosion, the manager of the station again reported complaints of water to Sun. After a Sun employee went to the station and found water in the gas, Midstates was again contacted. That afternoon, two employees of Midstates went to the station to check the basement tank. After turning off the flame in a gas-fired water heater in the basement, they broke the cement and this time found water in the tank. Since it was late in the day, the Midstates' employees decided to return the next day to complete the work, but they placed dirt, rather than cement, over the hole in the floor. There was conflicting testimony as to whether they turned the hot water heater back on before they left, but the jury could reasonably have found that they did.

When a different Midstates employee arrived the next morning, an employee of Sun was already at the station, delivering gasoline. The Midstates employee went down to the basement; upon discovering two to six inches of water covering the basement floor, he returned to his truck for his boots. He then re-entered the basement and attempted to find the source of the water leak. Several minutes later he heard a muffled sound, which he described as a "phoom," and noticed a flame shooting across the stairway to the cellar entrance. He escaped from the cellar, told Sun's employee to move his gasoline truck, and ran to a fire station one block away. He did not, however, tell the firemen about the history of the leaking tank. Nor did the Sun employee inform them that he had just filled the leaking tank with gasoline.

When the firemen arrived they observed heavy black smoke coming out of the first floor and the open cellar doors. All the firemen who testified stated they were familiar with the fact that this type of smoke is typical of petroleum fire and that they thought they were fighting nothing more than an oil burner fire. Two firemen entered the basement with a hose; an explosion knocked them backward and badly seared one fireman's face. Shortly after these men left the basement the major explosion occurred. The plaintiff in the test case representing the deceased firemen was located inside the building when he was killed; the other plaintiff was near the cellar opening when he was injured.

Plaintiffs' expert, whom the jury reasonably chose to believe, gave his opinion that the explosions were caused by the ignition of vaporized liquid gasoline. Hydrostatic pressure, caused by filling the basement tank with gasoline from the Sun truck, forced liquid gobs of gasoline through the openings in the tank, which was surrounded by water. The water carried the escaping gasoline to the surface through the hole in the floor, where it then vaporized, igniting on the surface of the water in the basement. After each explosion, the resultant heat caused the gasoline which escaped in the interim to ignite with greater force, finally resulting in the explosion which destroyed the building.

Plaintiffs' theory of liability is based on Sections 342 and 345 of the Restatement Second of Torts. Section 345 provides that one who enters the land in the exercise of a privilege is a licensee. Licensees, under Section 342, may recover for physical harm caused by a condition on the land only if the possessor[2] had rea-

---

[2] All parties agree that Sun and Midstates, acting on behalf of the possessor, are subject to the same duty as the possessor. See Restatement Torts (2d) §§383, 384 (1965).

son to know of the condition, should have realized that it involved an unreasonable risk of harm, should have expected that the licensee would not discover the danger, and failed to warn the licensee of the condition and risk involved.

Defendants assert that this was, at most, a negligently started fire, and that there is no liability for such fires; that, even if this was a condition which involved an unreasonable risk, defendants' employees at the scene did not know, or have reason to know, of the risk; and, finally, that plaintiff firemen assumed the risk of these explosion when they went to fight a fire at a gas station.

Although I believe that one who negligently starts a fire may be liable to firemen for proximately caused injuries,[3] the breach of duty here asserted does not concern itself with the manner in which the fire was started. Rather, it involves the duty owed to any licensee who enters the premises—it is a duty to warn of dangerous hidden conditions.[4] To find a breach of

___

[3] This Court has not, at least in this century, passed directly on this question insofar as it relates to firemen injured on the premises. See *Ruhl v. Philadelphia*, 346 Pa. 214, 29 A. 2d 784 (1943) (recovery allowed for injuries sustained off premises due to a negligently started fire); *Drake v. Fenton*, 237 Pa. 8, 85 Atl. 14 (1912) (fire classified as one due to an "unforseen occurrence").

[4] Although plaintiffs were content to have their case tried on this standard of care, I question whether the distinction between "licensees" and "invitees" is at all valuable in the context of this case. In some jurisdictions, firemen have been classified as invitees, see *Dini v. Naiditch*, 20 Ill. 2d 406, 170 N.E. 2d 881 (1960); cf. *Buckeye. Cotton Oil Co. v. Campagna*, 146 Tenn. 389, 242 S.W. 646 (1922) (firemen summoned from neighboring jurisdiction are invitees); in other jurisdictions, they have been classified as "sui generis," see *Buren v. Midwest Industries, Inc.*, 380 S.W. 2d 96 (Ky. 1964); *Shypulski v. Waldorf Paper Products Co.*, 232 Minn. 304, 45 N.W. 2d 549 (1951); *Krauth v. Geller*, 31 N.J. 270, 157 A. 2d 129 (1960). In fact, in some jurisdictions, the categories of the Restatement, creating differences between licensees and invitees,

the duty, the jury did not consider whether the fire was negligently started, but decided merely whether defendants should have realized that there was some condition on the land, involving an unreasonable risk of harm, which plaintiffs would not discover. I think that the jury could properly conclude, on the basis of testimony presented at trial, that the leaking gasoline tank did involve an unreasonable risk of harm—ie., the possibility that it would cause violent explosions—and that the firemen would not discover the condition of the leaking tank in the midst of fighting a fire. Cf. *Pryor v. Chambersburg Oil & Gas Co.*, 376 Pa. 521, 103 A. 2d 425 (1954) (involving water and gas, which escaped from an underground tank and ignited).

Defendants next assert that since their employees on the scene the day of the fire did not know the previous history of repairs, they could not have realized the risk involved and, therefore, were under no duty to warn the firemen. The corporate entity, however, can act only through agents and, consequently, all the knowledge of these agents must be imputed to the corporation. See *Corn Exchange National Bank & Trust*

---

have been abandoned. See *Pickard v. City and County of Honolulu*, 452 P. 2d 445 (Hawaii 1969) ; *Rowland v. Christian*, 70 Cal. Rptr. 97, 443 P. 2d 561 (1968) ; cf. *Kermaree v. Compagnie Generale Transatlantique*, 358 U.S. 625, 79 S. Ct. 406 (1959) (distinction between categories of licensee and invitee is foreign to maritime law).

In the least, I believe that a possessor of land should be held to a higher standard of care when a "condition," such as a fire, has the potential of "leaving" the premises. As the court en banc noted in its opinion, if the test case had involved a fireman injured off the premises, §371 of the Restatement would probably have applied. That section imposes liability for unreasonable activity which injures persons off the land, regardless of whether the condition was hidden and irrespective of any warning given. This would lead to the seemingly anomalous result of having the possessor's duty of care, with respect to the condition he creates, depend on the scope of the fire and the location of the victims. Cf. *Ruhl v. Philadelphia*, 346 Pa. 214, 29 A. 2d 784 (1943).

*Co. v. Burkhart,* 401 Pa. 535, 165 A. 2d 612 (1960); Restatement Agency (2d) §275 (1958). It is up to the corporation to make sure that its employees are informed, and the burden of their failure to inform cannot be placed on those who are injured thereby. Thus defendants' argument on this point is without merit, there being sufficient evidence from which the jury could infer that the corporate defendants had enough knowledge to comprehend the risk involved.

Defendants also assert that plaintiff firemen, as a matter of law, assumed the risk of gasoline exploding, since they were fighting a fire at a gas station. I do not believe that a fireman, by merely accepting employment and doing his job, necessarily assumes, voluntarily, the risks which are inherent in fighting particular types of fires. Further, in the instant case, the jury could properly find that there was no voluntary assumption of risk, predicated on their finding that the condition on the land creating the risk was one which the firemen did not discover. This Court has long held that the risk of injury from hidden defects is not one which, as a matter of law, is voluntarily assumed. See *Drake v. Fenton,* 237 Pa. 8, 85 Atl. 14 (1912) (fireman injured when falling down improperly guarded elevator shaft may recover); *Hild v. Montgomery,* 342 Pa. 42, 20 A. 2d 228 (1941) (licensee assumes all normal or ordinary risks, but does not assume risk of hidden dangers); cf. Restatement, Torts (2d) §496D (1965) (plaintiff must know of existence of risk and appreciate its unreasonable character for there to be a voluntary assumption of risk).[5]

---

[5] For decisions of like effect in other jurisdictions, see, e.g., *Kanelos v. Kettler,* 406 F. 2d 951, 955 (D.C. Cir. 1968) (plaintiff must have knowledge of risk and full appreciation of its dangers); *Buren v. Midwest Industries, Inc.,* 380 S.W. 2d 96, 99 (Ky. 1964) (fireman does not assume risk of "unusual hazards"); *Krauth v. Geller,* 31 N.J. 270, 157 A. 2d 129, 131 (1960) (liability can be im-

Defendants urge several other points which do not require extended discussion. The trial judge's charge on contributory negligence stated that the slightest degree of contributory negligence on the part of the plaintiff will prohibit recovery, but the contributory negligence must also be a proximate cause of the accident. In *Hamilton v. Fean*, 422 Pa. 373, 378, 221 A. 2d 309, 312-13 (1966), this Court held that it was reversible error for the court not to charge that plaintiff's negligence, like defendant's, must be the proximate cause of the accident. In fact, the example given there of a plaintiff's negligence, which would not contribute to an accident, was repeated by the trial judge in the instant case, almost word for word. *Crane v. Neal*, 389 Pa. 329, 132 A. 2d 675 (1957), does not hold otherwise. In that case the trial judge never mentioned that if plaintiff's negligence contributed in any degree to the accident, the claim would be barred. See id. at 332, 132 A. 2d at 677.

Defendants also allege numerous errors in the scope allowed to them in cross-examination. Upon examination of the record, however, I am unable to see any abuse of the trial judge's discretion in this matter. See *Parente v. Dickinson*, 391 Pa. 162, 137 A. 2d 788 (1958) ; *Lester v. Century Indemnity Co.*, 356 Pa. 15, 50 A. 2d 678 (1947) ; *Tolomeo v. Harmony*, 349 Pa. 420, 37 A. 2d 511 (1944).

Defendants also complain about four of the seven interrogatories submitted to the jury. While some of these interrogatories could, perhaps, have been better

---

posed where condition created undue risks of injury to firemen) ; *McConville v. State Farm Mut. Automobile Ins. Co.*, 15 Wis. 2d 374, 113 N.W. 2d 14, 16 (1962) (hazard to plaintiff's safety must be known and appreciated by him) ; cf. *Siragusa v. Swedish Hospital*, 60 Wash. 2d 310, 373 P. 2d 767, 773 (1962) (must find that plaintiff's exposure to risk was unreasonable, and knowledge and appreciation of risk are factors to consider).

framed, I cannot find that their wording prejudiced the defendants. Further, there was no inconsistency between the answers to the interrogatories and the general verdict, thus reinforcing the view that the jury was not misled. Since interrogatories are designed as a means to check on the propriety of the general verdict, consistency between the two leaves little reason to upset the general verdict. See 3 Goodrich-Amram, Standard Pennsylvania Practice §2257-1, at 114-15 (1958).

Plaintiffs in six of the cases which were not test cases are appealing the decision of the court en banc ordering that trials be held in their cases. The court pointed out that there was some evidence of contributory negligence on the part of these six plaintiffs, but that the pretrial order[6] designating the test cases was silent on the issue of contributory negligence. The court then reasoned that because "test" cases imply that issues are identical in all cases, the pretrial order could have no effect on these six cases. Hence, the six cases must be tried separately. The majority agrees with the court en banc, but I cannot.

Rule 212 of the Rules of Civil Procedure provides that a pretrial order when entered "shall control the subsequent course of the action unless modified at the trial to prevent manifest injustice." This reflects the basic reason for having pretrial orders—issues, once simplified, are to remain simplified throughout the trial unless there is some very good reason for a change. In long and complex trials, as here, this insistence on adhering to the simplification agreed to in the pretrial conference and order is most essential. Litigants who are dissatisfied with the simplification may object at trial and seek a modification if they can show manifest injustice. See 1 Goodrich-Amram, Standard Pennsyl-

---

[6] See note 1 supra.

94

vania Practice §212-11, at 46-47 (1951). But here, there was no attempt to object at trial. The objections to the test cases came only after the verdict. Pretrial conferences and orders will not serve their function of expediting trials, if this Court allows counsel to await an unfavorable verdict and then claim that the simplification hurt his case. Defendants here should be foreclosed because they failed to assert—at trial—that they objected to these test cases on the issue of contributory negligence. Compare *Payne v. S. S. Nabob*, 302 F. 2d 803, 807 (3d Cir.), cert. denied, 371 U.S. 870, 83 S. Ct. 136 (1962) (enunciating the importance of rarely granting amendments to pretrial orders).

I cannot too strongly state my belief that the majority today has emasculated Rule 212, and impaired the utility of pretrial conferences and orders by allowing counsel to object to pretrial orders *after* the trial has ended. For now, under the majority's treatment of this case, if an issue is not mentioned specifically in the pretrial order, counsel will be able to remain silent and await the verdict. Then, if the verdict is unfavorable, counsel can upset it by merely pointing out the issue that was "forgotten." In fact, I question whether the defendants here, in agreeing to the test cases, "forgot" about contributory negligence. After all, by choosing two plaintiffs injured on the premises, they were able to have the case tried on a less exacting standard of care. See note 4 supra. I do find it difficult to believe that any defense lawyer would forget about the issue of contributory negligence—an issue so elementary and so vital to his client's interests.

Backlogs in civil cases have become a hindrance to prompt and efficient judicial administration in this country, and in Philadelphia where this case was tried. We should not destroy the viability of pretrial procedures which can help speed the disposition of civil cases,

thereby reducing this incredible backlog. Accordingly, I most vigorously dissent from the majority's decision to affirm the court en banc in Numbers 218 and 219.

Mr. Justice O'BRIEN joins in this opinion.

CONCURRING OPINION BY MR. JUSTICE POMEROY:

On the merits the Court has affirmed the actions of the lower court, and with this I am in agreement. This brief comment is not directed to the merits of the appeal, but to the procedural problem presented by the use of the test case device where the pretrial order directing it is discovered to be defective.

I subscribe to Justice COHEN's remarks concerning the usefulness of the test case device and the need for this Court to develop guidelines for this type of action. My view of the case at hand, however, leads me to a different conclusion than Justice COHEN as to the appropriate result. In the present case, the pretrial order providing for simultaneous trial of two test cases was entered without an awareness by the trial court that contributory negligence would be an issue with respect to some plaintiffs. In the course of the trial, the importance of that issue became evident. Realizing that the situation of certain firemen placed them outside the reasonable ambit of the pretrial order, the trial court realistically attempted to rectify the situation by granting new trials as to those men. Post-trial modifications of such pretrial orders should be carefully weighed, but in my view the trial court was fully justified in its action in the present instance.

When events prove a pretrial order inadequate as to some parties, it does not follow that the order must for that reason be set aside as to all parties. In the present case, I think it was correct to conclude, as the lower court did, that a new trial as to all thirty-two plaintiffs was not required because of a defect in the consolidation order which affected only six of their

number. The trial of disputes on a test case basis is a device peculiarly suited to large-scale tort litigation of the sort now before us; refusal to allow correction of an imperfect order would in my mind unduly inhibit its use. Similarly inhibiting would be a requirement that absolute congruence of the situations of all parties be established as a necessary precondition of such orders.