409 A.2d 37

**Carole CARPENTER, Administratrix of the Estate of Darrell Carpenter, Deceased**

**v.**

**PENN CENTRAL TRANSPORTATION COMPANY, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 11, 1978.

Filed Aug. 17, 1979.

Reargument Denied Oct. 16, 1979.

William J. McKinley, Jr., Philadelphia, for appellant. William Goldstein, Philadelphia, for appellee.

Before PRICE, HESTER and HOFFMAN, JJ.

PRICE, Judge:

The instant appeal is from a judgment of the trial court in appellee's actions under the wrongful death and survival statutes. For the reasons stated herein, we reverse and remand for a new trial.

The facts pertinent to this appeal are as follows. On December 30, 1974, at approximately 9:43 p. m., the decedent, Darrell Carpenter, was found severely burned atop one of appellant's trains in its Philadelphia Suburban Station. According to a statement given by the decedent prior to his death, he had been accosted by an unknown assailant who robbed him at knife point, stabbed him in the leg and forced him to remove all his clothing except his socks and undershirt. The assailant gathered the clothing, threw it atop an adjacent train car and fled. The area of appellant's station in which the attack occurred was not being used at the time, and it is not known whether the decedent was there voluntarily or was forced there by the assailant. The decedent climbed up to the top of the train car to retrieve his clothes and apparently came into contact with the pantograph, a metal structure on top of the train car which transfers the electricity in the lines to the motor in the car. Although the car was not in use, 11,000 volts of electricity continued to flow through the overhead lines.

When the decedent contacted the pantograph, an "explosion" occurred, tripping a circuit breaker in the control center at the 30th Street Station and halting power in the overhead lines. The "power director" at the 30th Street Station immediately re-energized the circuit sending a second 11,000 volt shock through the decedent. The circuit again tripped and power was terminated until the decedent was discovered and removed to the hospital where he died on January 4, 1975. The power director testified that he reactivated the power because "outages" often occurred when birds, falling icicles and other objects came into contact with the wires. In 1974, 1190 "outages" occurred, with only one other caused by a human being coming into contact with the wires. At the time of the incident the pantograph had a two and one-half (2½) by twenty-six and one-half (26½) inch sign on two sides warning "DANGER–DO NOT TOUCH." The decedent stated that the car was dark and he thought that it was abandoned.

At the conclusion of trial, the jury returned a verdict on behalf of appellee in the amount of $150,000. Appellant appeals from that judgment and asserts four assignments of error primarily related to the issue of the decedent's status as a trespasser or licensee, and the appropriate standard of care required of appellant.

Appellant's first assignment is that the court below erred in not granting his motion for judgment n. o. v. This alleged error is predicated upon appellant's claim that as a matter of law, the decedent was a trespasser at the time he came into contact with the pantograph, and because no evidence was offered to establish that appellant engaged in willful or wanton misconduct, *see, e. g., Engel v. Parkway Co.,* 439 Pa. 559, 266 A.2d 685 (1970); *Evans v. Philadelphia Transp. Co.,* 418 Pa. 567, 212 A.2d 440 (1965); *Porreca v. Atlantic Refining Co.,* 403 Pa. 171, 168 A.2d 564 (1961), judgment n. o. v. should have been entered. We disagree for two reasons.

First, because appellant's station was open to the public, the decedent may have been a business invitee. *See,*

*e. g., Argo v. Goodstein,* 438 Pa. 468, 265 A.2d 783 (1970); *Crotty v. Reading Industries, Inc.,* 237 Pa.Super. 1, 345 A.2d 259 (1975); Restatement (Second) of Torts § 332 (1965) [hereinafter cited as Restatement]. Second, assuming arguendo that the decedent's status as an invitee changed to that of a trespasser when he climbed on top of appellant's train to retrieve his clothes, *see* Restatement, § 332, Comment *l.* (invitee status exists "only while he is on the part of the land to which his invitation extends . . .."), an exception exists under Restatement § 345 for one who enters onto the property of another in the exercise of a public or private privilege. Under Restatement § 198, the decedent was privileged to enter "for the purpose of removing a chattel to the immediate possession of which the actor is entitled, and which has come upon the land otherwise than with the actor's consent . . .." Moreover, under Restatement § 197 a person "is privileged to enter or remain on land in the possession of another if it is or reasonably appears to be necessary to prevent serious harm to . . . the actor, or his land or chattels . . .." In both instances the decedent would be classified as a licensee and appellant's responsibility would be increased to include a duty to warn the licensee as to the danger.[1] *See,* Restatement § 345; *Walsh v. Sun Oil Co.,* 437 Pa. 80, 262 A.2d 128 (1970) (Roberts, J., concurring and dissenting). Accordingly, the status of the decedent was not so clearly established that

1. We note that the trial court only instructed the jury regarding the license under § 197. Judge Takiff, dissenting in the court en banc, asserted that this was error and that the proper charge was under § 198. Reviewing the evidence adduced at trial, we conclude that both provisions may be relevant in assessing the propriety of the decedent's actions. Because the decedent's action in climbing on top of the train car to retrieve his clothes may have been motivated by a desire to protect himself from the weather and possible exposure in public, § 197 may have afforded such a privilege under the pretext of preventing serious harm to the decedent. Section 197 would, however, appear inapplicable in assessing the decedent's action as a means of recovering his clothes from possible destruction because they were not in danger of serious harm. Section 198 would, on the other hand, be relevant in determining whether the decedent acted properly in recovering chattels not exposed to serious harm. *See* Restatement § 198, Comment *c.* Accordingly, the jury should have been instructed as to both privileges.

the court could determine that he was a trespasser and enter judgment n. o. v. *See, e. g., Stewart v. Chernicky*, 439 Pa. 43, 266 A.2d 259 (1970).

Appellant's next three assignments relate to his motion for a new trial based upon alleged errors in the charge to the jury.

The first alleged error arises from the lower court's charge involving the principle of "private necessity" under Restatement § 197. As stated, sections 197 and 345 of the Restatement establish an exception to the usual trespass rule and provide that a would-be trespasser will be classified as a licensee if he enters onto the land of another and such entry "is or reasonably appears to be necessary to *prevent serious harm* to . . . the actor, or his land or chattels, . . . ." The actual charge of the court below was as follows: "[A] person is privileged to enter the property of another under certain circumstances which otherwise might make him a trespasser when he enters to remove or reclaim his own personal property or for his own personal safety." (Record at 442a).

■ Appellant alleges error in the quoted charge in that it established an absolute privilege of private necessity to recover the clothes or to seek safety, without the requirement that the entry be reasonably necessary to prevent serious harm either to the decedent or his clothes. While we agree with appellant's analysis of the alleged error, because it did not take exception to the court's charge on this basis or request an additional clarifying instruction, that alleged error has not been preserved for appellate review and has been waived. *See, e. g., Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974).

■ Appellant next alleges that the court below omitted the requirement of foreseeability from its charge on the duty to a licensee. As stated, Restatement § 345 creates an exception to the general trespasser rule and provides that if a plaintiff is injured in the exercise of a privilege, he will be classified as a licensee with the concomitant duty on the

property owner to warn the licensee of any hidden perils. Comment *d* to § 345 establishes, however, a requirement of foreseeability.

> "In order for the possessor to be liable under the rule stated in this Section for failure to warn a person who enters under a privilege arising without the possessor's consent, there must be a similar likelihood that ignorance of the condition will endanger the safety of the visitor. *Therefore the possessor must know or have reason to anticipate that the visitor is upon the land, or will enter it in the exercise of his privilege, and that he will be endangered by the condition.*" (emphasis added).

*See Tedesco v. Reading Co.*, 147 Pa.Super. 300, 24 A.2d 105 (1942) (no evidence to alert defendant that decedent would be on property in exercise of privilege). The charge of the court imposed an absolute duty to warn if the decedent was a licensee. No qualification was given that appellant must reasonably anticipate that a potential trespasser will be exercising a privilege in climbing to the top of the train car. Accordingly, because a corrective instruction was requested but denied, we reverse and remand for a new trial.

Appellant's final assignment is that the court below erred in charging on the doctrine of sudden emergency and its relationship to the contributory negligence of the decedent. Under that doctrine, the decedent's conduct which, under normal conditions, would be deemed contributory negligence will not bar appellee's recovery if the decedent was in the midst of a sudden emergency. Instead, the conduct is viewed in the context of the emergency.

> "Where one finds himself in a position of danger which is not the result of his negligence, he is not responsible if he make [*sic*] a mistake of judgment in getting out. An honest exercise of judgment is all that is required of him even if he could have done better if he had had time to deliberate."

*Community Fire Co. v. Pennsylvania Power & Light Co.*, 92 Pa.Super. 304, 309–10 (1928).

■ Appellant claims, however, that as a matter of law, the emergency had terminated, and the court erred in charging the jury on the doctrine. Essentially, appellant argues that the only emergency was the actual robbery and stabbing of the decedent, and that once the assailant fled, the emergency was at an end. Implicit within this argument is a claim that the decedent's position of being in a railroad station clad only in his socks and undershirt was not such an emergency as to entitle appellee to the charge. Reviewing the record, we agree with appellant.

■ The purpose of the sudden emergency doctrine is to relieve a victim from the sometimes stringent reasonable man standard when he is confronted with an occurrence that permits no opportunity to apprehend the situation and act accordingly. The doctrine is applied most often in automobile cases in which a driver is confronted with an occurrence requiring some form of immediate, evasive action. *See, e. g., Stacy v. Thrower Trucking, Inc.*, 253 Pa.Super. 150, 384 A.2d 1274 (1978); *Westerman v. Stout*, 232 Pa.Super. 195, 335 A.2d 741 (1975); 3 Troutman, Pennsylvania Negligence, Sudden Emergency (1967).

Instantly, we do not deem the decedent's status as one permitting a charge as to the sudden emergency doctrine. As noted in appellant's brief and in the dissenting opinion in the court below, the sudden emergency of the robbery, stabbing and the decedent's forced removal of his clothes had run its course once the assailant fled, and the action of the decedent in climbing to the top of the train car to retrieve his clothes was not part of that emergency situation. Indeed, his action in attempting to recover his clothes rather than seek aid for his wound may itself evidence a conscious and deliberate action rather than a reflexive and unconscious re-action to the situation. Nor do we believe that the decedent's unclad state would, in the situation here presented, constitute an emergency. Because the area of the station in which the robbery took place was not in use and the decedent was not immediately exposed to others, we must conclude that his situation was not one requiring a

"[s]hortage of time for decision, and circumstances which would perturb or upset the judgment of the ordinary reasonable man . . . ." Restatement § 296, Appendix, Reporter's Notes. Comment a.[2] Therefore, the lower court erred in charging on this doctrine.

The judgment of the court is reversed and the case is remanded for a new trial consistent with this opinion.

HESTER, J., files a dissenting statement.

HESTER, Judge, dissenting:

I respectfully dissent. In my judgment, in view of all the testimony, the decedent was a trespasser as a matter of law at the time he came into contact with the pantograph. In addition, there was no evidence produced that would establish that appellant was engaged in willful or wanton misconduct. I, therefore, am of the opinion that judgment n. o. v. should have been entered. See, *Engel v. Parkway Co.*, 439 Pa. 559, 266 A.2d 685 (1970); *Porreca v. Atlantic Refining Co.*, 403 Pa. 171, 168 A.2d 564 (1961) and the cases cited therein.

2. Although Restatement § 296 relates to a defendant's action in an emergency situation, Comment *a* to § 470 (relating to a plaintiff's action in an emergency) provides that the test in both situations is the same and the comments to § 296 are equally applicable and may be utilized in interpreting § 470.