**Glenn SHINER and Beth Shiner, His Wife, Appellants**

v.

**Ralph W. RALSTON, Jr., Executor of the Estate of Ralph W. Ralston, Sr., Deceased, Genuine Parts Company, and Suntrust Leasing Corporation.**

Superior Court of Pennsylvania.

Argued July 11, 2012.

Filed Feb. 22, 2013.

Troy M. Frederick, Indiana, for appellants.

Teresa F. Sachs, Philadelphia, for Genuine Parts, appellee.

BEFORE: BOWES, OTT, and STRASSBURGER,* JJ.

OPINION BY PER CURIAM:

Glenn and Beth Shiner (the Shiners) appeal from the order of September 28, 2011 granting summary judgment in favor of Appellees Ralph W. Ralston, Jr. (Ralston), executor of the estate of Ralph W. Ralston, Sr. (the Decedent), and Genuine Parts Company in this motor vehicle negligence case.[1] We reverse and remand for further proceedings consistent with this opinion.

The trial court summarized the facts of this case as follows.

This matter arises out of a vehicle accident which occurred on May, 17, 2007, in Benner Township, Centre County, Pennsylvania. The accident occurred when a pickup truck operated by [the Decedent] struck a Ford Taurus being operated by ... Glenn Shiner. [The Decedent's] vehicle was leased to [his] employer, ... General Parts Company, by its owner, ... Suntrust Leasing Corporation. At the time of the accident, [the Decedent] was travelling in the southbound lane of Route 6026 when his vehicle left its lane of travel and began moving toward the grassy median dividing the north and southbound lanes. [The Decedent's] vehicle traveled approximately 260 feet over the southbound rumble strip, through the grassy

---

* Retired Senior Judge assigned to the Superior Court.

1. Suntrust Leasing Corporation also moved for summary judgment, and the Shiners stipulated to the removal of Suntrust as a defendant. Therefore, the Shiners' claims against Suntrust are not addressed in this appeal.

median, then across the northbound rumble strip before striking ... Glenn Shiner's vehicle. Witnesses to the accident observed [the Decedent's] vehicle did not take any evasive maneuvers prior to the collision and the investigating officer, Corporal F.S. Burkett, found no evidence [the Decedent] performed any evasive maneuvers.... Glenn Shiner was injured in the collision and Mr. Ralston was pronounced dead following the accident.

An autopsy and attendant report completed by Gordon C. Handtle, M.D. found [the Decedent] suffered a cardiac dysrhythmia secondary to severe coronary atherosclerosis which caused [the Decedent] to become unconscious while operating his vehicle. [Appellees] retained accident reconstruction expert, Steven M. Schorr, P.E., and forensic pathologist, Dr. Wayne K. Ross, to opine regarding the circumstances of the collision. Consistent with Corporal Burkett, Mr. Schorr found there was no physical evidence to establish [the Decedent] steered, braked or accelerated after his vehicle left the southbound lane of travel. Dr. Ross determined a post mortem examination of [the Decedent's] heart exhibited significant coronary atherosclerosis (CAD) with overlying fibrosis, which was consistent with Mr. Ralston suffering a cardiac dysrhythmia prior to the collision. [The Shiners] also retained a forensic pathologist, Dr. Bennet I. Omalu, to opine regarding [the Decedent's] condition. Dr. Omalu also concluded [the Decedent] suffered cardiac syncope due to CAD and hypertensive cardiovascular disease, which resulted in [the Decedent's] loss of control of his vehicle.

Trial Court Opinion (TCO), 9/28/2011, at 1–2.

Ralston and Genuine Parts Company moved for summary judgment, claiming that the collision was the result of a sudden and unforeseeable medical emergency, and, therefore, as a matter of law neither Ralston nor his employer could be held liable to the Shiners.[2] The trial court agreed, and granted Appellees' motion. The Shiners filed a timely notice of appeal, and both the Shiners and the trial court complied with Pa.R.A.P. 1925.

The Shiners present three questions for our review.

I. Whether the trial court committed error and/or abused its discretion in granting Appellees' Motion for Summary Judgment as genuine issues of material fact remain.

II. Whether the trial court committed error and/or abused its discretion in finding that Appellees had satisfied the burden of proof required to successfully assert the affirmative defense of sudden medical emergency.

III. Whether the trial court committed error and/or abused its discretion in finding that [the Shiners'] medical expert report prepared by Dr. Bennet Omalu ... was legally insufficient.

Shiners' Brief at 4 (trial court answers omitted).

As the Shiners' questions are all interrelated, we address them together, mindful of the following.

Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard

---

**2.** The Shiners' claims against Genuine Parts Company are based upon vicarious liability for the Decedent, its employee. Genuine Parts Company's arguments in support of the motion for summary judgment are identical to Ralston's. For the sake of brevity, we will henceforth refer to only Ralston when discussing the issues.

of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

Summary judgment is appropriate only when the record clearly shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. The reviewing court must view the record in the light most favorable to the nonmoving party and resolve all doubts as to the existence of a genuine issue of material fact against the moving party. Only when the facts are so clear that reasonable minds could not differ can a trial court properly enter summary judgment.

*Cassel–Hess v. Hoffer,* 44 A.3d 80, 84–85 (Pa.Super.2012) (quoting *Englert v. Fazio Mech. Serv's, Inc.,* 932 A.2d 122, 124 (Pa.Super.2007)).

The trial court held that Ralston was entitled to judgment as a matter of law under the sudden emergency doctrine.[3] The trial court acknowledged that, as the party seeking to avail himself of the doctrine, Ralston "must establish the emergency condition which gave rise to a collision was sudden and unforeseeable." TCO, 9/28/2011, at 4. However, the trial court then went on to hold that "it was incumbent upon [the Shiners] to adduce evidence from which a jury could find the emergency confronting Mr. Ralston was not sudden or was foreseeable." *Id.* at 6.

 This confusion results from the fact that Ralston and the trial court improperly conflated "the sudden emergency doctrine" and "the sudden medical emergency defense." The sudden emergency doctrine in Pennsylvania is not an affirmative defense. It is a legal principle that provides that "an individual will not be held to the 'usual degree of care' or be required to exercise his or her 'best judgment' when confronted with a sudden and unexpected position of peril created in whole or in part by someone other than the person claiming protection under the doctrine." *Lockhart v. List,* 542 Pa. 141, 665 A.2d 1176, 1180 (1995). It does not relieve one of all responsibility to act with reasonable care to avoid an accident and thus, unlike an affirmative defense, the sudden emergency doctrine need not be pled under Pa.R.C.P. 1030(b). *Lockhart, supra; Leahy v. McClain,* 732 A.2d 619 (Pa.Super.1999). The sudden emergency doctrine merely relates to the standard of conduct applied to "a driver who, although driving in a prudent manner, is confronted with a sudden or unexpected event which leaves little or no time to apprehend a situation and act accordingly should not be subject to liability because another perhaps more prudent course of action was available." *Lockhart, supra* at 1180. In other words, "a person confronted with a sudden and unforeseeable occurrence, because of the shortness of time in which to react, should not be held to the same standard of care as someone confronted with a foreseeable occurrence." *Id.* The purpose of the doctrine "is to relieve a victim from the sometimes stringent reasonable man standard when he is confronted with an occurrence that permits no opportunity to apprehend the situation and act accordingly." *Carpenter v. Penn Central Transp. Co.,* 269 Pa.Super. 9, 409 A.2d 37, 40 (1979).

 In contrast, the sudden medical emergency defense is an affirmative de-

---

**3.** Ralston did not argue in his motion for summary judgment that the Shiners failed to adduce evidence to make out a *prima facie* case of negligence against him. The sole issue before the trial court was whether Ralston was entitled to summary judgment based upon the sudden emergency defense.

fense often pled as sudden loss of consciousness or incapacitation. Since the defense avoids negligence, it must be pled as new matter and proven by the defendant. Pa.R.C.P. 1030. Research failed to yield any Pennsylvania appellate decisions officially recognizing the defense, although our Supreme Court, in *Bass v. Commonwealth*, 485 Pa. 256, 401 A.2d 1133, 1135–1136 (1979), acknowledged that ordinarily, where non-negligent conduct results in injury to another, it is not actionable. The Court illustrated that principle with a hypothetical involving an attorney on his way to the Prothonotary's Office to file an appeal who suffered an unexpected heart attack, lost control of his vehicle, and injured a bystander. The Court concluded that the attorney would not be held liable to the bystander, the implication being that the heart attack precluded a finding of negligence.

 Federal courts applying Pennsylvania law have recognized and applied unconsciousness as a defense. *See Freifield v. Hennessy*, 353 F.2d 97 (3d Cir.1965) (under Pennsylvania law, an automobile operator who, while driving, is suddenly stricken by an unforeseeable loss of consciousness is not chargeable with negligence); *see also Pagano v. Magic Chef, Inc.*, 181 F.Supp. 146 (E.D.Pa.1960). Numerous jurisdictions recognize a similar defense. *See* Annotation: 93 A.L.R.3d 326; 2 Harper and James, Law of Torts, pp. 920, 921 § 16.7. The assumption is that when a person is unconscious and unable to act, he is incapable of negligence. Unforeseeable loss of consciousness, if proven, is a complete defense to negligence, and the defendant bears the burden of establishing the defense.

Ralston moved for summary judgment based on what he called "the exception from liability in motor vehicle cases where a sudden and unforeseen loss of conscious-

ness by a driver results in an accident." Defendants' Motion for Summary Judgment, ¶ 21. Citing *Bass, supra*, and *Norvell License*, 85 Pa. D. & C. 385 (1953), and testimony from Mrs. Ralston that the Decedent had not complained of any cardiac symptoms before leaving his home that day, Ralston maintained that reasonable minds could not differ that the Decedent suffered a sudden and unexpected medical emergency that rendered him unconscious prior to the accident. Defendants' Motion for Summary Judgment, at ¶¶ 37–38.

Ralston's position is problematic because the record reveals that, while he asserted numerous affirmative defenses as new matter, he failed to plead sudden unconsciousness or an unexpected medical emergency. Instead, he merely denied that the Decedent was negligent. Affirmative defenses not pled as new matter, with limited exceptions not applicable herein, are waived. Pa.R.C.P. No. 1032.

 The trial court, in ruling on Ralston's motion for summary judgment based upon the sudden medical emergency defense of unconsciousness, applied *Leahy* and *Lockhart, supra*, involving the sudden emergency doctrine. In holding that the Decedent's unconsciousness "rendered him incapable of exercising any level of judgment," the trial court found, as a matter of law, that no reasonable care was expected. Furthermore, as a result of the confusion between the doctrine and the defense, the trial court improperly placed the burden upon the Shiners to disprove that the loss of consciousness was sudden and unexpected, rather than upon Ralston to prove it affirmatively.

In moving for summary judgment, the burden remained on Ralston to show that there was no issue of material fact and that he was entitled to judgment as a matter of law. It was Ralston's burden to show that no reasonable jury could con-

**6**

clude that the Decedent was negligent in causing the Shiners' damages. From our examination of the record, it is clear that Ralston failed to do so.

The evidence Ralston offered to establish that the Decedent's cardiac syncope was unforeseen was (1) the absence of indicia of prior symptoms in Ralston's medical records and (2) the testimony of the Decedent's wife and son that the Decedent never experienced symptoms of cardiac problems.

The lack of reference to cardiac symptoms in the Decedent's medical records might establish that the Decedent did not complain to his medical providers about cardiac symptoms, and is certainly circumstantial evidence that supports a finding that the syncope was unforeseen. However, by no means does it conclusively establish that the Decedent never experienced symptoms prior to the date of the collision. The medical records do not demonstrate that Ralston is entitled to summary judgment.

■ Nor is the testimony of the Decedent's family sufficient to sustain Ralston's burden. Pursuant to the *Nanty–Glo*[4] rule, a "defendant's oral testimony cannot be the basis for summary judgment in his favor." *Valles v. Albert Einstein Medical Center*, 569 Pa. 542, 805 A.2d 1232, 1239 (2002). *See also Toy v. Metropolitan Life Ins. Co.*, 593 Pa. 20, 928 A.2d 186, 189 n. 3 (2007) ("Testimonial affidavits of the moving party or his witnesses, not documentary, even if uncontradicted, will not afford sufficient basis for the entry of summary judgment, since the credibility of the testimony is still a matter for the jury."). A jury could find the witnesses not credible

and conclude that Ralston did in fact experience prior symptoms.

Furthermore, the evidence offered by Ralston that the medical emergency was unforeseen was **not** uncontradicted. Dr. Omalu's report includes the following.

[The Decedent] was experiencing exacerbated signs and symptoms of his long standing CAD for a sustained and prolonged period before he suffered a cardiac syncope, which resulted in his loss of control of the truck he was driving. He had sufficient time to respond to his signs and symptoms and to prevent the fatal motor vehicle crash on May 17, 2007. In addition, there is a reasonable probability that [the Decedent's] cardiac syncope was accompanied or accentuated by a metabolic syncope due to hypoglycemia given the time of occurrence of his motor vehicle crash and gastric contents at autopsy. An accompanying metabolic syncope would present with premonitory signs, which should have given [the Decedent] sufficient anticipatory time to react and avert the fatal crash, especially when he had suffered these metabolic syncopies in the past.

Report of Dr. Bennet Omalu, 4/17/2011, at 7.

Although it acknowledged that Dr. Omalu's opinion would enable a jury to "conclude [the Decedent] previously suffered cardiac events which, in many people, cause signs and symptoms associated with CAD[,]" the trial court held that the report was insufficient "to show [the Decedent] did, in fact, experience such signs or symptoms." TCO, 9/28/2011, at 5.

Again, the Shiners, neither at summary judgment nor at trial, bear the burden of

4. *Borough of Nanty–Glo v. American Surety Co. of New York*, 309 Pa. 236, 163 A. 523 (1932).

establishing that the Decedent should have foreseen the syncope that caused the collision. To avail himself of the sudden medical emergency defense, Ralston must prove that the syncope was unforeseen.

 Although it was unnecessary for the Shiners to produce any evidence on the issue, Dr. Omalu's opinion further demonstrates that there is an issue of fact for the jury to resolve. This is especially true given that the opinion of an expert offered by a party who does not bear the burden of proof on an issue need not be as certain as those of the experts of the party who bears the burden of proof. *See, e.g., Jacobs v. Chatwani*, 922 A.2d 950, 961 (Pa.Super.2007), *Neal by Neal v. Lu*, 365 Pa.Super. 464, 530 A.2d 103, 109 (1987)

(holding no error in allowing defendant's expert to testify as to "possible" other causes of the plaintiff's problems).

Therefore, we hold that the trial court's determination that Ralston was entitled to summary judgment was error for all of the reasons raised by the Shiners on appeal.

Order reversed. Case remanded for further proceedings consistent with this opinion. Jurisdiction relinquished.