478 A.2d 828

John M. POLUMBO, Administrator of the Estate of
Charles G. Leshko, Sr.

v.

Angelo DESTEFANO, Joseph Cavalleri, Richard Nelson and
Safeway Truck Co., a/k/a Safeway Trucking Company

v.

CADILLAC MOTOR CAR DIVISION OF GENERAL
MOTORS CORP. (Two Cases)

Appeal of Richard NELSON and Safeway Truck Co., a/k/a
Safeway Trucking Company. (Six Cases)

Ann Louise LESHKO

v.

Angelo DESTEFANO, Joseph Cavalleri, Richard Nelson and
Safeway Truck Co., a/k/a Safeway Trucking Co.

v.

CADILLAC MOTOR CAR DIVISION OF
GENERAL MOTORS CORP.

v.

John M. POLUMBO, Administrator of the Estate of
Charles G. Leshko, Sr.

George SAGAN and Evelyn Sagan, his wife,

v.

Angelo DESTEFANO, Joseph Cavalleri, Richard Nelson and
Safeway Truck Co., a/k/a Safeway Trucking Company

v.

CADILLAC MOTOR CAR DIVISION OF
GENERAL MOTORS CORP.

Ann Louise LESHKO

v.

Angelo DESTEFANO, Joseph Cavalleri, Richard Nelson and
Safeway Truck Co., a/k/a Safeway Trucking Co.

v.

CADILLAC MOTOR CAR DIVISION OF
GENERAL MOTORS CORP.

v.

John M. POLUMBO, Administrator of the Estate of
Charles G. Leshko, Sr.

George SAGAN and Evelyn Sagan, his wife

v.

Angelo DESTEFANO, Joseph Cavalleri, Richard Nelson and Safeway Truck Co., a/k/a Safeway Trucking Company

v.

CADILLAC MOTOR CAR DIVISION OF GENERAL MOTORS CORP., and John M. Polumbo, Administrator of the Estate of Charles G. Leshko, Sr.

Superior Court of Pennsylvania.

Argued Oct. 12, 1983.

Filed June 1, 1984.

Reargument Denied Aug. 14, 1984.

James P. McKenna, Jr., Pittsburgh, for appellants.

Richard G. Fine, Scranton, for Destefano, appellee (at Nos. 1073 and 2631).

Thomas J. Sharkey and Joseph J. Ustynoski, Hazleton, for Leshko, appellee (at Nos. 1074 and 2632).

Joseph J. Ustynoski, Hazleton, for Sagan, appellee (at Nos. 1075 and 2633).

Before SPAETH, President Judge, and POPOVICH and HOFFMAN, JJ.

POPOVICH, Judge:

This is an appeal from the Order of the en banc Court of Common Pleas of Luzerne County, which was reduced to a judgment on August 9, 1982, denying defendants-appellants' (Richard Nelson and Safeway Truck Company's) motions for a judgment *non obstante veredicto* or a new trial.[1] We reverse.

The measuring stick against which the grant or denial of a judgment n.o.v. is to be assessed has been stated to be the following:

> In reviewing the trial court's denial of appellant's motion for judgment n.o.v., the evidence, together with all reasonable inferences therefrom, must be viewed in the light most favorable to the verdict winners. *Flickinger Estate v. Ritsky*, 452 Pa. 69, 305 A.2d 40 (1973); *Kreso-*

---

1. After the first witness had been questioned on direct examination, the plaintiffs-appellees (Ann Louise Leshko, John M. Polumbo, Administrator of the Estate of Charles G. Leshko, Sr. and George and Evelyn Sagan) agreed to sign a Joint Tortfeasor's Release, in the amount of $90,000, against Angelo DeStefano, Joseph Cavalleri (the owner of the tractor trailer driven by DeStefano) and Zurich American Insurance Company. (N.T. 84, 188–189 & 462)

It requires mention that, in regard to the question of jurisdiction, the fact that the Order dated March 26, 1982, affirming the jury's verdict, ultimately was "reduced to judgment for purpose of appeal" obviates the need for a remand to rectify the initial interlocutory nature of the Order. *See* Pa.R.App.P. 301(a).

However, to the extent that the instant case involves appeals (Nos. 1073, 1074 & 1075 Philadelphia, 1982) from the March 26, 1982 Order, they are quashed.

*vich v. Fitzsimmons,* 439 Pa. 10, 264 A.2d 585 (1970); *Cerino v. Philadelphia,* 435 Pa. 355, 257 A.2d 571 (1969). All conflicts in the evidence, moreover, must be resolved in favor of the prevailing party. *Moyer v. Ford Motor Co.,* 205 Pa.Super. 384, 209 A.2d 43 (1965); *Metts v. Griglak,* 438 Pa. 392, 264 A.2d 684 (1970); *Axilbund v. McAllister,* 407 Pa. 46, 180 A.2d 244 (1962). However, where the evidence is insufficient to sustain a verdict against the losing party, a court will enter judgment n.o.v. in favor of the appellant despite a verdict to the contrary. *Kolb v. Hess,* 227 Pa.Super. 603, 323 A.2d 217 (1974); *Eldridge v. Melcher,* 226 Pa.Super. 381, 313 A.2d 750 (1973).

*Mike v. Borough of Aliquippa,* 279 Pa.Super. 382, 388–89, 421 A.2d 251, 254 (1980). *Accord McDevitt v. Terminal Warehouse Co.,* 304 Pa.Super. 438, 450 A.2d 991 (1982), petition for allowance of appeal denied October 29, 1982 [No. 447 E.D. Allocatur Docket 1982].

Viewing the evidence in a light most favorable to the non-moving party plaintiffs-appellees, the following appears of record: At approximately 6:00 p.m. on the 5th of June, 1975, Angelo DeStefano was driving a conventional tractor (meaning, the engine was out in front of the cab) pulling an empty 33-foot, flatbed trailer in a westerly direction on Interstate 80. It was not dark, and DeStefano was moving at about 45 m.p.h., on a 55 m.p.h. posted highway, because the road surface was wet. (N.T. 391)

DeStefano had just come off a bridge and could see, some 250 feet ahead, that a Cadillac had stopped on the berm of the road, just past the exit for White Haven, Pennsylvania. He slowed and, with the Cadillac about 100 feet away, applied his brakes. When he did so, however, the tractor trailer started to jackknife. (N.T. 394) At this point, he looked in his left rear mirror and saw that another tractor trailer, later determined to be driven by Richard Nelson and leased to Safeway Truck Company, "was coming up on" him. (N.T. 420) This prevented DeStefano from moving into the left lane, so he started to pull off to the right. As

he attempted to do so, he struck the rear of the Cadillac. This impact caused the Cadillac to veer to the left, and, in a counter clockwise motion, back onto the highway surface with the front end facing south. (N.T. 131 & 132) Before DeStefano was able to get off the highway and stop by driving up an embankment to his right, the Cadillac traveled "say sixty, seventy feet." (N.T. 189) Thereafter, the Cadillac crossed into the southerly portion of the westbound lane of Interstate 80 at an angle and was struck by Nelson's tractor trailer while in the passing lane. The two vehicles traveled for some 400 or 500 feet before coming to rest in a ditch on the right hand side of the westbound lane of Interstate 80. (N.T. 138 & 190)

The driver of the Cadillac, Charles Leshko, was killed and the two passengers, Mrs. Ann Louise Leshko in the front seat and a Mr. George Sagan in the back, survived.

The case proceeded to trial and a jury found the defendants, which included Richard Nelson and Safeway Truck Company, negligent. Post-verdict motions were denied and judgment was entered for the plaintiffs and against the defendants-appellants.

On appeal, appellants present three issues for our review,[2] but, because of the result reached instantly, we need only respond to appellants' complaint that the evidence (or, more appropriately, the lack thereof) warranted the entry of a judgment n.o.v.

Appellants urge that the testimony on the question of negligence was so inadequate that it should not have been submitted to the jury for resolution. Rather, they contend that Nelson, faced with a sudden emergency not of his own making, could not have done anything to avoid the accident.

**2.** The other two issues raised by the appellants concern: 1) whether the trial court erred in admitting the damaging testimony of an economist on the issue of decedent Leshko's lost future earnings, which evidence allegedly failed to meet the requirements set forth in *Kaczkowski v. Bolubasz,* 491 Pa. 561, 421 A.2d 1027 (1980); and 2) whether counsel for the Sagans committed acts of misconduct during the course of the trial which separately or collectively may have influenced the jury in reaching its verdict. (Appellants' Brief at 1)

In response, appellees argue that "[a] review of the record shows that Nelson's position is untenable and not supported by the credible evidence." In particular, they direct our attention to the inconsistency in Nelson's deposition, trial and appellate accounting as to when he first saw the Leshko Cadillac.

■ Before examining the allegations of both sides, we find it prudent to set forth some of the precepts that have emerged in regard to the sudden emergency doctrine, and, then, see how they affect the case at bar.

To begin with:

The purpose of the sudden emergency doctrine is to relieve a victim from the sometimes stringent reasonable man standard when he is confronted with an occurrence that permits no opportunity to apprehend the situation and act accordingly. The doctrine is applied most often in automobile cases in which a driver is confronted with an occurrence requiring some form of immediate, evasive action.

*Carpenter v. Penn Central Transportation Co.*, 269 Pa. Super. 9, 16, 409 A.2d 37, 40 (1979). Further, the presence of a sudden emergency negates the applicability of the "assured clear distance" rule; *viz.*:

Originally a common law principle, the "assured clear distance ahead" rule is a part of The Vehicle Code, Act of May 1, 1929, P.L. 905, § 1002, *as amended*, 75 P.S. § 1002 (1971) [now recodified in essentially the same format at 75 Pa.C.S.A. § 3361], which provides, *inter alia*, that "no person shall drive any vehicle, upon a highway ... at a speed greater than will permit him to bring the vehicle to a stop within the assured clear distance ahead." The assured clear distance ahead rule has been held to require that a driver operate his vehicle in such a manner that he can always stop within the distance he can *clearly see*. Otherwise stated, the rule requires that such control be maintained as will enable a driver to stop and avoid obstructions that fall within his vision.

It is apparent that this distance, the range of a driver's vision, may vary according to the visibility at the time and other attendant circumstances[.]

\* \* \* \* \* \*

When an obstacle is encountered by a driver which is within his line of travel, the distance to the obstacle becomes the time and distance limitation at the moment that the obstacle comes into view. The "driver must carefully watch so that he can see, if this is reasonably possible, any obstacle in his way, and can stop before a collision with it."

\* \* \* \* \* \*

[W]here a sudden and clear emergency arises *inside* the range of the previously assured clear distance, the rule has been held inapplicable. A sudden and clear emergency may be a dust cloud, *a moving object, a sudden blocking of the road, the sudden swerving of other vehicles* or the aforementioned blinding lights. (Citations omitted) (Emphasis added in part)

*Unangst v. Whitehouse*, 235 Pa.Super. 458, 464, 344 A.2d 695, 698–699 (1975).

Thus, based on the preceding, we need to determine if, initially, a sudden emergency was proven by Nelson, and, then, if the facts giving rise to the emergency "leave no room for doubt, [so that] the issue becomes a matter of law for the judge." (Citation omitted) *Rohay v. Breyak*, 409 Pa. 568, 571 n. 1, 186 A.2d 913, 915 n. 1 (1963). On this point, we find the case of *Moore v. Meyer & Power Co.*, 347 Pa. 152, 31 A.2d 721 (1943) instructive.

In *Moore*, a truck belonging to Meyer & Power Company was being driven south on Route 68, a two-lane highway. The appellee was a passenger in a Ford sedan owned and operated by a Mr. Young, which was traveling south on the same roadway. At a distance of about 200 feet, both drivers observed each other. Young, mistakenly believing that the oncoming Meyer truck had insufficient room to

pass, edged his vehicle to the right. When he did so, the wheels came in contact with snow and slush on the berm, the sedan suddenly swerved and skidded across the highway at right angles to and directly in front of the on-coming truck which struck it broadside. Whether the sedan had come to a stop or was still in motion at the time of the collision does not appear and the appellee's evidence does not establish the distance between the two vehicles when the skid began.

347 Pa. at 153, 31 A.2d at 722.

The truck driver's version placed the sedan 50 feet away from him when it skidded into his path and, despite his best efforts to avoid the collision, culminated in an accident.

The *Moore* Court, in the course of holding that the jury was presented with insufficient evidence from which to conclude that there was an opportunity for the truck driver to act after the appearance of danger, made some observations that are germane to the case at bar; namely:

It is true, as said in *Nark v. Horton Motor Lines, Inc.,* 331 Pa. 550, 553, 1 A.2d 655, 656, that "No man has a right to continue his car or truck in motion if such motion makes an injury to another car or to any person inevitable or reasonably probable." But the evidence adduced by appellee in the present case renders this rule inapplicable. *Not only does the evidence fail to disclose any estimate of the period elapsing between the time the sedan swung to the left and the impact, but appellee's own evidence affirmatively establishes that the whole series of events culminating in the collision "happened like a flash." Similarly, Young, driver of the automobile and the only other witness for appellee as to how the accident happened, stated the impact "happened so quick" after the sedan started to skid that he could not say whether the automobile had come to a stop or was still in motion at the time of impact, and admitted his inability to give any estimate whatever of the time "that passed between the time [he] first saw the truck coming toward [him] and the time [he] landed on the*

*other side of the road.*" Far from showing a situation within the rule of the Nark case, the evidence brings this case squarely within the rule that negligence will not be inferred from a failure to perform a duty so suddenly and unexpectedly arising that there was no opportunity to apprehend the situation and act according to the exigency. As said in *Polonofsky v. Dobrosky,* 313 Pa. 73, 76, 169 A. 93, 94: "When one finds himself in a position of danger which is not the result of his negligence he is not responsible if he makes a mistake in judgment in getting out. An honest exercise of judgment is all that is required of him even if he could have done better had he had time to deliberate." See also, *Mulheirn v. Brown,* 322 Pa. 171, 176, 185 A. 304; *Sudol v. Gorga,* 346 Pa. 463, 467, 31 A.2d 119. (Emphasis added)

347 Pa. at 154, 31 A.2d at 722.

■ Instantly, as in *Moore,* the estimation of the amount of time that elapsed between the initial impact of the Cadillac with DeStefano's tractor trailer and the contact with Nelson's vehicle is couched in terms of: "just a matter of a second or two;" "it just happened ... quickly;" within a "split second;" "instantaneously;" and "just bang." These expressions of time-lapse are devoid of any indicia offering Nelson an opportunity to reflect as to what course of action he should have taken, other than that which he did pursue. This is substantiated by a close scrutiny of the proceedings.

At trial, DeStefano testified that he could not avoid the accident by moving out to the left, passing lane because he saw "another truck coming down" on him. (N.T. 77, 420 & 435) This would have been Nelson, who was "approximately forty feet" back and in the "passing lane" when DeStefano tried to take some evasive action. (N.T. 79, 97–98, 108 & 393) Further, although DeStefano never saw Nelson's truck actually strike the Cadillac before he ran off to the right, grassy section of Interstate 80 (N.T. 401, 433–435), he did remark on the options available to Nelson by saying: "... when the car was coming across southwardly, that

[second] tractor trailer had nowhere to go, neither." (N.T. 82)

The passenger in the rear seat of the Cadillac (George Sagan), albeit not able to recollect how far the vehicle traveled between the two impacts, did answer to the question, "... how much time elapsed from the time [the Cadillac] was struck by Mr. DeStefano's tractor trailer and the time that the second impact occurred?" "Just a matter of a second or two, just that quick." [3] (N.T. 143)

Even the plaintiffs' witness, James Connor, presented testimony favorable to Nelson on this issue.

James Connor was on the off-ramp of the White Haven exit when he noticed the Leshko Cadillac "sliding sideways .... across the lanes" and getting hit by Nelson's truck. (N.T. 177 & 178) The witness estimated that the Cadillac, before crossing into the southerly portion of the westbound lane of Interstate 80, after being struck by the DeStefano truck, traveled a distance of "say sixty, seventy feet." (N.T. 189) However, the witness was careful to note that he only observed the second collision, between Nelson and the Cadillac. (N.T. 179) As he recalled it, he saw the Cadillac on the berm of the road while he was driving on the off-ramp of Exit 40 (White Haven). He took his eyes off the Cadillac to see where he was driving, and, as he came around the ramp, he saw the DeStefano tractor trailer on the grass and "also at that second or split second later, [he] saw the Cadillac sliding sideways." (N.T. 203) "It just happened that quickly, you know." (N.T. 179)

When counsel for the appellants asked Connor, "What was the time interval from the time that the Cadillac entered the side of the roadway until the impact with the second tractor trailer?" the following exchange ensued:

**3.** Ann Louise Leshko, the decedent's wife and a passenger in the right front seat of the Cadillac, did not remember the accident except for what happened "[a]fter the accident occurred[.]" (N.T. 252)

It is appropriate to note here that, as was the case with Mrs. Leshko, Nelson also stated he did not know the distance traveled by his tractor trailer between the moment that DeStefano hit the Cadillac and his tractor trailer struck the same vehicle. (N.T. 470)

370

A   Just bang.

Q   A split second?

A   Just a matter of a second and it was done, you know. (N.T. 223)

Of even more interest is this impartial witness' responses to another series of questions posed by the same attorney, to-wit:

Q   But when you saw him [Nelson], when you saw him appear after this Cadillac shot across the highway as you have described, did he have any ability to do anything to avoid that collision?

A   Sir, from the time I saw him, no.

Q   He had nothing—he could have done nothing?

A   Before that, I don't know what he could do before that. He hit him (witness indicated by clapping hands.)

Q   That was almost instantaneously?

A   Yes.

(N.T. 206)

As for the version of the accident proffered by Nelson, the appellees rely heavily upon the alleged inconsistencies present in his deposition, trial testimony and accounting given to an investigating state trooper on the scene to discount our invading the province of the jury, whose function it was to resolve what disparity there was in the testimony.

Appellees excerpt that portion of Nelson's deposition where he states that the first time he observed the Leshko Cadillac "it was … pointed in a westerly direction … in the traveling lane[.]" (Appellees' Brief at 4) They then go on to reproduce Trooper Barclay's accounting that he (Nelson) "was in the traveling lane behind the DeStefano vehicle when the DeStefano vehicle began to jack-knife[.]" *Id.* at 5. Lastly, the appellees ask us to examine that part of the trial testimony which reveals that Nelson, driving a cab-over tractor trailer (which means the front bumper of the tractor is even with the windshield and the driver sits on the

engine), was parallel with DeStefano's trailer (the front portion) when it jackknifed. He then saw the Cadillac, heard a bang and observed the Cadillac in the driving lane "c[o]me around [in] front of [him] and [he] hit it." *Id.* at 7.

The evidence is not as cryptic as the appellees would have us believe, nor is it so fraught with inconsistencies that by granting a judgment n.o.v. we would be invading the bailiwick of the jury on factual matters *vis-a-vis* legal ones. *Rohay v. Breyak, supra.* In other words, although Nelson's trial testimony and the version of the accident he gave to Trooper Barclay, *on the question of his exact location on Interstate 80 at the moment DeStefano jackknifed,* are not mirror images of each other, the record in toto reflects a pattern of consistency on the crucial issues of the existence of a sudden emergency, not of Nelson's own making, and the absence of any appreciable time which would have afforded Nelson the opportunity to react to (or extricate himself from) a perilous situation thrust upon him within the span of "a second." The testimony of those witnesses who were able to estimate the time span within which the accident occurred—the Cadillac's first contact with DeStefano and second impact with Nelson—was uniform on this subject.

The Nelson tractor trailer was traveling at a speed of 47–48 m.p.h. when DeStefano jackknifed. The sequence of events that followed, which, it must be remembered transpired over a matter of a second or two, consisted of Nelson hearing a "bang" and seeing the front end of the Cadillac in the westbound curb lane for the first time. At this moment, Nelson was in the passing lane when the Cadillac suddenly turned at a right angle into his lane of travel before it was struck on the driver's door and pushed some 400–500 feet down the highway.

We believe that the jury was presented with insufficient evidence from which it could rightly find that there was an opportunity to act after the appearance of danger. *See Moore v. Meyer & Power Co., supra.* Because Nelson had but a fleeting glance to judge what to do when he first saw

372

the Cadillac in his path, we believe that the evidence was insufficient for a basis of a finding of negligence. *See Anderson v. Perta*, 138 Pa.Super. 321, 10 A.2d 898 (1940).

While the driver of an automobile should be on his guard to avoid collision, if there arises a situation, unusual and not likely to be anticipated, he is not held responsible for the high degree of care which should be exercised under unusual circumstances. *Anderson v. Perta, supra.* We find, based on all the evidence presented, that such was the case instantly. *Moore v. Meyer & Power Co., supra.*

Accordingly, the Order of the court en banc denying the judgment n.o.v. is reversed with direction that judgment be entered for Nelson and Safeway Truck Company. Jurisdiction is relinquished.