561 A.2d 714

**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**Ronald Alfred WILLIAMS, Appellant.**

Supreme Court of Pennsylvania.

Argued Sept. 27, 1988.

Decided July 5, 1989.

Donald D. Doerr, Jr., Butler, court-appointed, for appellant.

David Cook, Dist. Atty., David A. Hepting, Asst. Dist. Atty., and Robert F. Hawk, Asst. Dist. Atty., Office of the Dist. Atty., Butler, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and STOUT, JJ.

## OPINION

McDERMOTT, Justice.

Ronald Williams appeals from a sentence of death following conviction of first degree murder. He alleges numerous errors. We will for reasons stated subsequently remand this case for imposition of life sentences.

Those who engage in a criminal purpose, seek by their strategies to isolate a person, thing or event from all possible contingency. When they do they face a formidable obstacle; the common place, the ordinary run of things, which have a way of upsetting the best laid plans. The appellant tried his hand against the scheme of things and was undone by the most causal and natural events of a summer's night in August 1984. On that night at the Nor Sub parking lot on Route 19 in Butler County, Pennsylvania, appellant's brother machine gunned one Archie Bradley to death. Eyes he could not plan against would see and tell. A truck driver was watching television in the cab of his truck and heard the shooting. A passing motorist saw a car cross his path and would identify the appellant as the driver. An alert police officer seeing a car without lights gave chase and recovered the Mac 10 pistol and the crashed escape car owned by the appellant.

Both fled on foot through the woods and the appellant called a girl friend to come drive him home. When she came looking for him she could not find the place they were to meet. She did a quite ordinary thing; she asked a police officer for directions. Then it was morning and the chase was over and the appellant was in the hands of the police. Shortly thereafter so was his co-defendant brother, Raymond Williams.

First, independent of any defense offered by the appellant and the offered alibi evidence that he was in Pittsburgh at the time of the killing, the evidence is clear beyond any doubt that a homicide was committed against Archie Bradley. Mr. Richard Anderson, the truck driver watching television in the cab of his tractor trailer, heard machine gun fire and would identify the co-defendant as the man standing over the victim. Nor is there any doubt that the Mac 10 pistol recovered when thrown from the fleeing car was the murder weapon. Nor is there any doubt that the fleeing Oldsmobile that crashed was the car of the appellant.

■ The appellant argues that the witness who saw a car leave the parking lot, the car chased by the police and who identified him as the driver of that car, is not to be believed. The reason is that Mr. Stewart allegedly identified the triggerman, Raymond Williams as a white male while in fact he is black. Appellant argues that the identification ought to have been suppressed because it was unduly suggestive and insufficiently supported by an independent basis.

We cannot agree. After the shooting, Mr. Stewart called the police emergency operator to tell them what he observed. When asked by the operator whether the subject he saw running from the parking lot was a white male or a black male, Mr. Stewart replied yes. To which the operator noted white male. At trial this discrepancy regarding the co-defendant's race was used as the basis from which to attack Mr. Stewart's identification of the appellant. He, Mr. Stewart, however, maintained throughout that he could only identify the appellant, who was the driver of the getaway vehicle, and could not identify the race of the co-defendant, the man he saw running to the awaiting automobile. The tape of that call was not available at trial and therefore could not be used to impeach or to affirm Mr. Stewart.

The appellant has argued that the tape was tampered with by the police. We ordered remand to the trial court to hear argument on that question and we are satisfied that such was not proved. Mr. Stewart's identification was nonetheless vigorously tested on the ground that his descriptions differed from the tape. His credibility was resolved against the appellant. We have examined his identification and find that it was properly admitted as an in-court identification based on an independent opportunity to see and identify the appellant when their cars pulled parallel to each other on the night of the crime. Nor do we fault counsel for not requesting a lineup when a lineup might have hammered closed any opportunity for subsequent impeachment of Mr. Stewart. The trial court had sufficient

reason to find an independent basis for identification independent of any suggestive possibilities of the in-court identification on the following basis by the trial judge.

At this time a Mr. Robert Stewart also observed the actions of the defendant's car as he was traveling South on U.S. Route 19 on his way to work. Mr. Stewart noticed a tall, thin man running across the Nor–Sub parking lot towards the Oldsmobile. As Mr. Stewart drove past the Oldsmobile he noticed that it was pulling out onto the highway. As he proceeded down U.S. Route 19 he also noticed that a police car (the one being driven by Officer Hartman) was following the Oldsmobile. Mr. Stewart then stopped at the red light at the intersection of Freedom Road and Route U.S. 19, at which time the Oldsmobile pulled up alongside of his car. Mr. Stewart got a chance to look into the Oldsmobile and saw the driver, who he later identified in court as Ronald Williams.

At this point traffic began to move and Mr. Stewart proceeded straight through the intersection and the Oldsmobile made a quick right turn down Freedom Road, pursued by Officer Hartman.

We have stated that the necessary factors in determining whether a victim had an independent basis for an in-court identification are:

. . . the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. *Commonwealth v. James*, 506 Pa. 526, 534, 486 A.2d 376, 380 (1985); *Commonwealth v. Slaughter*, 482 Pa. 538, 546, 394 A.2d 453, 457 (1978).

The record reveals that Mr. Stewart obtained a full frontal view of the appellant from several feet away in a well lighted area while the two men were parallel to each other in separate cars. Both of these vehicles at the time of the observation were either stopped or in the process of slowing

down for a traffic light at an intersection. The fact that appellant was being chased by a police officer in a marked car with emergency lights in operation and the fact that appellant pulled off the road onto the shoulder to the right of Mr. Stewart's automobile are factors which tend to indicate that a high degree of attention was afforded appellant. Though the record is devoid of any prior description given by Mr. Stewart of this individual, it does show that Mr. Stewart did make an identification on August 23, 1984 at the Preliminary Hearing, and on December 28, 1984 at the Suppression Hearing and finally on January 29, 1985 at Trial. The initial identification was made eighteen (18) days after the murder took place. Throughout the proceedings the degree of certainty regarding Mr. Stewart's identification of the appellant was unwavering.

Based on the totality of the circumstances surrounding the identification of the appellant by Mr. Stewart, we conclude that the trial court did not err in failing to grant suppression of the in-court identification.

Appellant also contends that counsel was ineffective in failing to request cautionary instructions on Mr. Stewart's testimony. He argues that counsel should have requested the content of Model Instruction 4.07 of the Pennsylvania Suggested Standard Jury instructions.

A charge to a jury need be in no special wording. *Commonwealth v. Kyle*, 367 Pa.Super. 484, 533 A.2d 120 (1987); *appeal denied*, 518 Pa. 617, 541 A.2d 744 (1987). What is required is that a charge must adequately cover the issue however worded.

We have reviewed the charge of the court and find it a careful review of the law and instruction for the jury's duty to review the evidence. The evidence of opportunity for observations was well lighted, and at close range. The victims obtained a full frontal view under circumstances that would rivet attention to the operator of a vehicle pursued by police. Under the circumstances neither a

"Kloiber"[1] charge or the suggestion of the standard charge were required.

█ Appellant also contends that he was denied sufficient funds to finance an expert analysis of the tape of the 911 call of Mr. Stewart. He was granted funds to provide a four hour analysis by an expert. The expert reported he did not and could not analyze the tape because his facilities to do so were insufficient.

During the course of the proceedings trial counsel argued that the emergency 911 recording was altered or in some way had been the subject of tampering. This was alleged to be newly discovered evidence based upon a report by appellant's expert witness. By order dated March 9, 1987, we remanded the case for an evidentiary hearing. On April 15, 1987 the trial court ordered that a hearing be scheduled as soon as the 911 tape had been examined by the Federal Bureau of Investigation and by appellant's expert. An evidentiary hearing was held on October 30 and November 4, 1987. At these hearings the only evidence regarding the issue of whether the tape had been tampered with was the testimony a special agent of the Magnetic Tape Analysis, Field Technical Services Division, of the Federal Bureau of Investigation. The agent testified that he performed a number of tests upon the tape to determine if it had been altered in any way and that he found no evidence of alterations or tampering. He concluded that the tape was an original recording. On December 4, 1987, a four page letter from appellant's expert was received which was subsequently filed with the court. That letter stated that he, the expert witness, did not have the facilities in his laboratory to determine if the tape recording had been tampered with and that he could not determine if the tape was an original recording.

We begin by stating that there is no obligation on the part of the Commonwealth to pay for the services of an investigator. *Commonwealth v. Box*, 481 Pa. 62, 391 A.2d

1. *Commonwealth v. Kloiber*, 378 Pa. 412, 106 A.2d 820 (1954) *cert. denied*, 348 U.S. 875, 75 S.Ct. 112, 99 L.Ed. 688.

1316 (1978). The investigator here, a speech scientist, was supposed to determine if the tape in question had been altered and was then to testify on appellant's behalf in that regard. On completion of the November 4, 1987 hearing the court granted an oral motion by appellant to guarantee fees for investigation by this investigator for up to four (4) hours work at the rate of one hundred twenty-five dollars per hour. It was further ordered that the record remain open for a ten day period for the preparation of a brief and for the investigator to put his report into evidence. On November 17, 1987, appellant submitted a motion for recalculation of funds for scientific analysis of the tape by this investigator for a two day work period instead of four hours as originally ordered. This motion was denied. A letter was then sent by this investigator saying that he could not analyze the tape. We are satisfied that the court did more than it was required to do in aiding the appellant in his defense and that the court's finding that the tape was not altered is supported by the evidence contained in the record.

Next the appellant argues he was obliged to exhaust peremptory challenges on jurors who should have been removed for cause. The record reveals that while the prospective jurors admitted to prejudice or predispositions they nonetheless swore they would put them aside and follow the law and instruction of the court. The issue is, however, moot because the jurors were challenged by appellant's co-defendant and did not serve as jurors.

■ Appellant's contention that he was prejudiced by his counsel's failure to challenge only those jurors who would impose capital punishment in a proper case who are qualified to serve, is now settled as a meritless argument.

Under federal constitutional law the constitutionality of the death qualification of a jury was addressed and rejected by the United States Supreme Court in *Lockhart v. McCree*, 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986). *See also Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). Additionally, as a matter of state

constitutional law, this Court has declined to afford an accused greater protection than that which is mandated by the Federal Constitution. *Commonwealth v. Peterkin*, 511 Pa. 299, 513 A.2d 373 (1986), *cert denied*, 479 U.S., 1070, 107 S.Ct. 962, 93 L.Ed.2d 1010 (1987). *Commonwealth v. Sneed*, 514 Pa. 597, 526 A.2d 749 (1987). Therefore we can not deem counsel's performance ineffective.

 The appellant argues in a series of complaints that he was prejudiced by prosecutorial misconduct. His first complaint in this series is that the prosecutor withheld exculpatory evidence. This involved a note found in the getaway car that read [Nor Sub 10:30]. The note was examined by the FBI to determine if the handwriting could be traced. The FBI, in a report submitted after trial, said they could not say without further samples. The prosecutor argued that at trial because the note was printed and not written it could not be analyzed. That was not evidence he had before trial since the FBI report was not then submitted. It was his own deduction that printed letters cannot be used to identify handwriting. Whether that was right or wrong is of small moment because the note was found in the car and who wrote it was not an issue and the prosecutor did not say who wrote or printed it. He said only that it was found in his car, a bit of circumstantial evidence that "Nor Sub at 10:30" had the significance of its presence in a car owned by appellant.

The appellant argues he was prejudiced when the court refused his demurrer to charges of possession of instrument of crime, prohibited offensive weapon, receiving stolen property and firearms not to be carried without a license. If the jury accepted all the evidence offered all the crimes charged were proved and the court was correct in denying the almost frivolous demurrer.

 There is at last an argument in which the appellant should prevail. As outlined in the case of Raymond Williams, *Commonwealth v. Raymond Williams*, 514 Pa. 62, 522 A.2d 1058 (1987), there was evidence offered, post-trial, that at the sentencing phase of these proceedings,

extraneous and improper information came among the jurors as to prior criminal activity. To wit rumors of two pending murder charges in another jurisdiction as to Raymond Williams and general allegations of criminal misconduct as to Ronald Williams. In *Raymond Williams, Id.*, we remanded to the trial court for those reasons that a life sentence be imposed, the appellant here was not present at those hearings because his counsel was not available. We do not believe that his presence would have altered our belief that the sentencing hearing, whether for both or either, would have changed our view that under those circumstances a death penalty was not sustainable.

STOUT, former Justice, did not participate in the decision of this case.

NIX, C.J., and PAPADAKOS, J., concur in the result.