**Dupes v. Lockard**

C.P. of Dauphin County, no. 2143 S 1997.

*James Pannebaker,* for plaintiff.
*James G. Nealon III, Karen Durkin* and *Jarad W. Handelman,* for defendant.

KLEINFELTER, *J.,* August 30, 1999— It has recently been dubbed the "Capital Beltway," a heavily traveled interstate highway that circles the greater Harrisburg area. A section of this beltway, technically I-83, just north of

the Route 581 connector, is the situs of the chain collision which gave rise to the instant complaint of operator negligence.

Plaintiff Kathy A. Dupes was the operator of the second (or middle) car involved. Defendant Michael J. Lockard was the operator of the first (or lead) vehicle. Defendant Jonathan E. Palmos was the operator of the third vehicle in the chain.

At a jury trial conducted before this court on March 3-5, 1999, the witnesses described the events as follows:

"Lockard: Cars or vehicles in front of me began to brake. They were braking hard because I was coming up on them pretty quick.

"I started braking hard, and that's when the back end of my car started to fishtail to the—counterclockwise to the right, and then it was kind of like a 45-degree angle. I hit the median barrier and Mrs. Dupes' car hit me from behind, and I felt the second impact. It was Mr. Palmos' vehicle hitting her vehicle." (N.T. 75.)

"Dupes: I remember being in the passing lane. I remember there was a white car in front of me, and I knew there was traffic behind me. Going down the highway, I remember there was a white car in front of me. There was also cars in the right lane beside me.

"For some unknown reason, this white car in front of me started to do a fishtail number back and forth in the passing lane. I tried—let's see.

"I braked my car, thinking that he's going to straighten the car out eventually. The whole time he's fishtailing, and all of a sudden, he just swerves to the left and wildly

hits the center median and completely stops broadside in my lane.

"Q: And what happened at that point?

"Dupes: I still had the brake on. My car hit his car, and I was hit in the rear. . . .

"Palmos: I was—as I was coming up to, where 581 and 83 come together, it got pretty congested. And, well, you know how whenever it gets really congested when you're driving, you can see through the back of a person's windshield and through the front of their windshield and see the car in front of them? And I was just pretty much doing that.

"And then, I saw Mr. Lockard's car—I saw the rear end of his car come up to—you know, where it naturally says that the brake—braking really hard, because all the weight goes to the front of the car.

"And then, the car—then the car started to, slide sideways. As then as soon as I saw his—his—actually, whenever I first saw, his rear end come up, I slammed on my brakes really hard to the point where they were—they start sliding, and then that's whenever I started watching both vehicles, because I wanted to make sure—I wanted to make sure I could do what I could do so that nobody—or, try to keep other people from getting hurt or anything.

"And that's when Mr. Lockard's car started to go sideways, and whenever it started to go—whenever it started to go sideways, that's whenever the front left-hand corner of it hit the concrete barrier.

"As soon as it hit the concrete barrier, it stopped. It just stopped it right, pretty much right in its tracks, and

Mrs. Dupes hit the side of Mr. Lockard's vehicle, and then—then I hit the back of Mrs. Dupes." (N.T. 55-56.)

The jury was presented with an interrogatory form of verdict slip. Question no. 1 asked: "Do you find that any of the defendants were negligent?" As to both Lockard and Palmos, the jury answered this question "no." Following the instructions on the verdict form, the jury then returned to the courtroom without addressing the issues of causation, Dupes' contributory negligence, comparative negligence, or damages.

Dupes has now filed motions for post-trial relief in the nature of a motion for a new trial and for judgment n.o.v.

Dupes' motion for a new trial claims error by the trial court in instructing the jury on the principles of the "assured clear distance ahead rule" and on the doctrine of "sudden emergency."[1] Although these issues are raised separately in Dupes' argument headings, the discussion of one necessarily involves the other. In fact, Dupes' brief argues that "it was improper to instruct the jury that the assured clear distance rule applied to the plaintiff without instructing the jury that if the plaintiff was confronted with a sudden emergency, the assured clear distance rule was not applicable to her." (Plaintiff's brief, 2.)

Dupes relies on *Papandrea v. Hartman,* 352 Pa. Super. 163, 507 A.2d 822 (1986) for the proposition that, where a sudden emergency arises, the "assured clear dis-

---

1. Plaintiff's motion also claims error in the admission of certain psychiatric evidence; however, this issue is deemed abandoned since it was not briefed. *Commonwealth v. Perry,* 279 Pa. Super. 32, 420 A.2d 729 (1980).

tance ahead" rule is inapplicable. Actually, what the case holds is that, where the evidence *conclusively* shows a sudden emergency, the rule is not applicable. "[I]f the facts giving rise to the emergency leave no room for doubt, [then] the issue becomes a matter of law for the judge." *Id.* at 169, 507 A.2d at 825, citing *Polumbo v. DeStefano,* 329 Pa. Super. 360, 366, 478 A.2d 828, 831 (1984).

On the other hand, "it is proper for the court to charge on both points of law if the facts do not conclusively establish the existence of a sudden emergency situation." *Id.* at 170, 507 A.2d at 826, citing *Elder v. Orluck,* 334 Pa. Super. 329, 343-44, 483 A.2d 474, 481-82 (1984). Thus, in every case where sudden emergency is asserted, the trial judge must make a preliminary assessment as to whether the existence of the emergency is a jury question or is clear as a matter of law.[2] Given the fluid and problematic circumstances of modern expressway traffic, it would be a rare case where a court could determine, as a matter of law, that the actions of a driver ahead created a sudden emergency which would excuse what otherwise might be negligence of the plaintiff driver.

Such is the case at bar. The actions of the Lockard vehicle were claimed by Dupes to create a sudden emergency. But did they? Certainly what happened to Lockard created a hazard in front of Dupes; but was her failure to avoid hitting him a product of a sudden emergency? Or, was she following too closely, traveling too fast, or inat-

---

2. In which case, the court could enter a directed verdict for defendant.

tentive to the traffic ahead? "[A] person cannot avail himself of the protection of this doctrine if that person was himself driving carelessly or recklessly." *Lockhart v. List,* 542 Pa. 141, 151, 665 A.2d 1176, 1180 (1995). These questions could not be answered as a matter of law and were clearly for the jury. *Id.*

Dupes also argues that the court failed to charge the jury that the "sudden emergency doctrine" could be applied to Dupes. Such is not the case. When discussing the principles of negligence, assured clear distance, and a "sudden change of circumstances" (term used in our charge) we applied the instruction to all of the parties. We instructed: "[I]n light of such a sudden change of circumstances, an operator—all of these operators are required to respond reasonably. . . . and I've used this male pronoun here, 'he,' in a lot of these instructions, but that should be heard by you as he or she under the circumstances of this particular case." (N.T. 179.)

There is nothing mystical in the term "sudden emergency." Nor, for that matter, is there anything extraordinary in the term "assured clear distance ahead." Lawyers and judges are apt to attach some particular reverence to these phrases; but, stripped of their doctrinal veneer, they are nothing more than common-sense applications derived from the general principles of negligence.

We instruct a jury that negligence is the doing—or failing to do—some act which a reasonable, prudent person would do—or not do—under the circumstances presented. Even without a vehicle code mandate to operate one's vehicle so as to be able to stop within the assured

clear distance ahead, it would still be the reasonable, prudent thing to do. Likewise, a reasonable, prudent driver is not held to foresee every imaginable obstacle which might suddenly emerge in his path. Thus, both the assured clear distance rule and the sudden emergency doctrine are only formalized ways of stating the obvious; *i.e.,* the reasonable driver should maintain a speed and distance that will allow safe stopping under normal circumstances. When the abnormal or unforeseen occurs, the operator is excused.

In today's world of expressway driving, a jury must apply its own standard as to what is normal, what is foreseeable, and how a "reasonable man" should operate his vehicle. In this case, the jury was instructed to apply the general principles of negligent operation to a vehicle operator on the Capital Beltway in rush-hour traffic. They were instructed on assured clear distance and a "sudden change of circumstances." Upon review of the record, our instructions, taken as a whole, adequately informed the jury of the legal principles applicable to this case. Cf., *Commonwealth v. Williams,* 522 Pa. 287, 561 A.2d 714 (1989).

Even were we to assume for argument that the instruction to the jury on sudden emergency was flawed, a new trial would be warranted only where the alleged error was prejudicial to the plaintiff. *Reilly by Reilly v. SEPTA,* 507 Pa. 204, 489 A.2d 1291 (1985). The doctrine of sudden emergency exists solely as a *defense* to a claim of negligence. As applied to a plaintiff, the defense only has viability on a claim of contributory negligence. It must be obvious that the entire issue becomes moot if

the jury never comes to the point of considering contributory negligence. Such is the case instantly.

One of the fringe benefits of a verdict form using interrogatories is that it permits some analysis of the jury's rationale in returning a verdict. In this case, the first question to be answered by the jury was, "Do you find that any of the defendants were negligent?" The jury answered "no" both as to Lockard and to Palmos.

One can only conclude that the jury determined these operators to be driving prudently, within the assured clear distance ahead; or, if not, that they were confronted with a sudden change of circumstances which excused their inability to stop safely. In either event, the jury never reached the question of Dupes' negligence. As to her operation, assured clear distance and sudden emergency became irrelevant.

A similar situation was presented in *Sacco v. City of Scranton,* 115 Pa. Commw. 512, 540 A.2d 1370 (1988).

"This court has held that the denial of a new trial will not be reversed unless the appellate court, upon [re]viewing the jury instructions as a whole, finds that those instructions have caused prejudicial error. . . . Upon reviewing the jury instructions in this case, we cannot conclude that the instructions have caused prejudicial error. Any error caused by the trial court's instructions was harmless in light of the fact that the jury never reached the question of *appellant's* comparative negligence. The jury determined only that *appellee* was negligent but that such negligence was not a substantial factor in bringing about appellant's harm." *Id.* at 520, 540 A.2d at 1374. (citation omitted) (emphasis in original)

In the present case, the applicability of either the assured clear distance rule or sudden emergency doctrine to Dupes was dependent on the jury's reaching consideration of her contributory negligence. Since it did not, any error could not have been prejudicial to her.

Dupes' final contention is that she is entitled to judgment n.o.v. since the verdict as to defendants Lockard and Palmos was against the weight of the evidence and contrary to law. As to Palmos, Dupes points to his testimony that he was doing "about 55" (the speed limit), the traffic was congested, and that he was following the Dupes car by "about two car lengths." (N.T. 54-55, 58.) Dupes would have us declare that under these circumstances, Palmos was negligent as a matter of law since he could not stop within the assured clear distance when Dupes suddenly began to brake.

As for Lockard, Dupes points to his testimony indicating a speed of 60 m.p.h. following traffic at about 250-300 feet. (N.T. 75, 78.)

Dupes argues that in finding neither defendant negligent, the jury must have concluded that she "was solely negligent and the cause of the accident or that none of the parties were negligent and that these things just happen." (Plaintiff's brief, 17.)

While we will never know the exact rationale employed by the jury in finding no negligence in either defendant, we do know that the granting of judgment n.o.v. is a drastic remedy and that a court cannot lightly ignore the findings of a duly-selected jury. In considering judgment n.o.v., "the evidence must be considered in the light most favorable to the verdict winner, and he must be given

the benefit of every reasonable inference of fact arising therefrom, and any conflict in the evidence must be resolved in his favor." *Simmons v. Pacor Inc.,* 543 Pa. 664, 672, 674 A.2d 232, 236 (1996).

"There are two bases upon which a judgment n.o.v. can be entered: one, the movant is entitled to judgment as a matter of law, and/or two, the evidence was such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. With the first, a court reviews the record and concludes that even with all factual inferences decided adverse to the movant, the law nonetheless requires a verdict in his favor, whereas with the second, the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure." *Davis v. Berwind Corp.,* 547 Pa. 260, 266, 690 A.2d 186, 189 (1997), citing *Moure v. Raeuchle,* 529 Pa. 394, 402-403, 604 A.2d 1003, 1007 (1992).

Beyond peradventure? Could no two reasonable minds doubt or question this verdict? We would like to think that 12 reasonable minds considered the verdict. It is likely that many, if not all, of the jurors who heard this case travel the Capital Beltway, and at rush hour, on a regular basis. While this aging jurist might consider a speed of 55 m.p.h. at two car-lengths distance in rush hour traffic to be imprudent, personal experience shows it to be the rule rather than the exception. Perhaps the jury took this norm to be the act of a reasonable man in assessing the alleged negligence of Lockard and Palmos. Or perhaps, as plaintiff's counsel suggests, they concluded "that these things just happen." In either event,

we decline to substitute our standards of driving reasonableness for those of the jury.

### ORDER

And now, August 30, 1999, plaintiff's motions for post-trial relief are denied.